**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

LG CAPITAL FUNDING, LLC                                    Index No.: 1:17-cv-04394-DAB

                Plaintiff,                                    Hon. Deborah A. Batts


      -against-


WINDSTREAM TECHNOLOGIES, INC.,

                Defendant.

----------------------------------------------------------X


## WINDSTREAM TECHNOLOGIES INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS


Mark R Basile, Esq. [MB-2201]
**The Basile Law Firm P.C.**
*Attorneys for Defendant*
68 S. Service Rd., Ste. 100
Melville, New York 11747
(516) 455-2134
mark@thebasilelawfirm.com

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES.................................................................................................. iii-vi

APPLICABLE STATUTES ................................................................................................. vi

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS.................................................................................................2-6

LEGAL ARGUMENT ........................................................................................................ 6

       POINT I
       THE CONVERTIBLE NOTE IS A LOAN SUBJECT TO N.Y. USURY LAWS .............7

       POINT II
       USURY IS DETERMINED AT THE TIME LOAN IS CREATED IN NEW YORK .......9

       POINT III
       THE CONVERSION DISCOUNT VALUE OF 45%, RESERVED TO PLAINTIFF AT
       THE TIME THE LOANS WERE MADE IS INTEREST TO BE INCLUDED IN
       USURY ANALYSIS AND VIOLATES NEW YORK USURY LAWS ............................11

       POINT IV
       THE VALUE OF THE RESERVATION OF SHARES RESERVED TO PLAINTIFF AT
       THE TIME OF THE LOANS IS INTEREST UNDER NY LAW AND VIOLATES
       NEW YORK USURY LAWS............................................................................................13

       POINT V
       THE DEFAULT RATES OF INTERST CHARGED AT THE TIME THE LOANS
       WERE MADE VIOLATES NEW YORK USURY LAWS .................................................15

       POINT VI
       USURIOUS INTENT IS CLEAR FROM THE FOUR CORNERS OF THE NOTE ..........17

       POINT VII
       CRIMINALLY USURIOUS LOANS IN NEW YORK ARE VOID UNDER G.O.L. §5-
       511 ..................................................................................................................................... 18

       POINT VIII
       NO EQUITABLE RELIEF FOR USURIOUS TRANSACTIONS ....................................21

CONCLUSION ............................................................................................................24

ADDENDUM.............................................................................................................25

## TABLE OF AUTHORITIES

Pages

*Abir v. Malky, Inc.,*
        2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.) ................................. 2,8,17

*Alibatya v. N.Y. Univ. (In re Alibatya),*
        178 B.R. 335, 336 (Bankr. E.D.N.Y. 1995) ............................................................................ 8

*Aquila v. Rubio,*
        2016 NY Slip Op 50682(U), 51 Misc. 3d 1217(A), 38 N.Y.S.3d 830 (Sup. Ct.) ................... 10

*Ashcroft v. Iqbal,*
        556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................ 6

*AWG Leasing Tr. V. United States,*
        592 F. Supp. 2d 953 (N.D. Ohio 2008) ............................................................................... 12,13

*Bakhash v. Winston,*
        2015 NY Slip Op 08966, 134 A.D.3d 468, 19 N.Y.S.3d 887 (App. Div.) .............................. 2

*Balaber-Strauss v. Murphy (In re Murphy)*
        331 B.R. 107, 135 (Bankr. S.D.N.Y. 2005) ........................................................................... 22

*Bell Atl. Corp. v. Twombly,*
        550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................ 6

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.,*
        2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.) ................................ 12,13,14,
        ........................................................................................................................ 17,18,21,22

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.,*
        310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) .......................................................................... 7,16

*Brodie v. Schmutz (In re Venture Mort. Fund, L.P.),*
        282 F.3d 185 (2d Cir. 2002) ................................................................................................ 19, 20

*Corbett v. Napolitano,*
        897 F. Supp. 2d 96, 110 (E.D.N.Y. 2012) ............................................................................ 6

*Curtiss v. Teller,*
        157 A.D. 804, 143 N.Y.S. 188 (App. Div. 1913) ................................................................. 1, 21

*Custom Chrome, Inc. v. Commissioner,*
        217 F.3d 1117 (9th Cir. 2000) .............................................................................................. 11-13

*Fareri v. Rain's Int'l, Ltd.,*

*187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992)* ............................................................ 2,17

Feinberg v. Old Vestal Rd. Assocs.,
*157 A.D.2d 1002, 550 N.Y.S.2d 482 (App. Div. 1990)* ........................................................ 8

Funding Grp., Inc. v. Water Chef, Inc.,
*2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct.)* .............................. 8,14

Giventer v. Arnow,
*37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975)* ...................................................... 2

Hammelburger v. Foursome Inn Corp.,
*54 N.Y.2d 580, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981*)..................................................... 2

Hayden v. Paterson,
*594 F.3d 150, 161 (2d Cir. 2010)* ......................................................................................... 6

Hillair Capital Invs., L.P. v. Integrated Freight Corp.,
*963 F. Supp. 2d 336 (S.D.N.Y. 2013)* ................................................................................ 11

Holmes v. Air Line Pilots Ass'n,
745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010) .......................................................................... 7

Hufnagel v. George,
*135 F. Supp. 2d 406 (S.D.N.Y. 2001)* ................................................................................ 18, 20

In re Colad Grp., Inc.,
*324 B.R. 208, 222(Bankr. W.D.N.Y. 2005)* ....................................................................... 2

In re Estate of Jackson,
*120 A.D.2d 309, 508 N.Y.S.2d 671 (App. Div. 1986)* ........................................................ 10

In re Grand Union Co.,
*219 F. 353 (2d Cir. 1914)* .................................................................................................. 9

In re Rosner,
*48 B.R. 538 (Bankr. E.D.N.Y. 1985* ................................................................................... 17

Lenz v. Associated Inns & Restaurants Co. of Am., 833 F. Supp. 362, 377 (S.D.N.Y. 1993)…….. 3

LG Capital Funding, LLC v. Sandomedics Int'l Holdings, Inc., 2015 NY Slip Op 32232(U) (Sup.
Ct.) ........................................................................................................................................ 8

Lowe v Waller,
*Doug. 736* ........................................................................................................................... 8

Madden v Midland Funding,
    No. 11-CV-8149 (CS), 2017 U.S. Dist. 27109 (S.D.N.Y. Feb. 27, 2017) ...........................15,16

Orvis v. Curtiss,
    157 N.Y. 657, 661, 52 N.E. 690, 691 (1899) ......................................................................7

Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.),
    311 B.R. 781 (Bankr. E.D. Mo. 2004)..........................................................................10,11

Phlo Corp. v. Stevens,
    00 Civ. 3619 (DC), 2001 U.S. Dist.17490, at *12 (S.D.N.Y. Oct. 25, 2001) .......................11,13

Pryor v. Fisher (In re Dimino),
    429 B.R. 408, 419 (Bankr. E.D.N.Y. 2010)..........................................................................2

Rothstein v. Isolation Film LLC,
    2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017)............................................... 7,18,22,23

Sabella v. Scantek Med., Inc.,
    2009 U.S. Dist. 88170 (S.D.N.Y. Sep. 21, 2009) ...............................................................11

Sira v. Morton,
    380 F.3d 57, 67 (2d Cir. 2004) ...........................................................................................7

Starr v. Sony BMG Music Entm't,
    592 F.3d 314 ........................................................................................................................7

Szerdahelyi v. Harris,
    67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986)...................................1,2,18,20,23

The Board of Managers of the Park Avenue v Citibank,
    100066/2013, (N.Y. Supreme Ct. 2015) ........................................................................ 16

Union Capital Ltd. Liab. Co. v. Vape Holdings Inc. & Island,
    No. 16-cv-1343 (RJS), 2016 U.S. Dist. 72973 (S.D.N.Y. Mar. 8, 2016).......................8, 9, 16

Ujueta v. Euro-Quest Corp.,
    2006 NY Slip Op 4074, 29 A.D.3d 895.................................................................................8

Venables v. Sagona,
    2011 NY Slip Op 5261, 85 A.D.3d 904, 925 N.Y.S.2d 578 (App. Div.) ...............................17

Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,
    517 F.3d 104, 115 (2d Cir. 2008) .......................................................................................6

**The New York Usury Statutes Applicable to this Motion**

**NY CLS Gen. Oblig. §5-501 <u>Rate of Interest; Usury Forbidden</u>**

*Except as otherwise provided by law**, interest shall not be charged, taken or received on any loan or forbearance at a rate exceeding such rate of interest as may be authorized by law <u>at the time the loan or forbearance is made</u>**, whether or not the loan or forbearance is made pursuant to a prior contract or commitment providing for a   greater rate of interest…(emphasis added, <u>double emphasis added</u>)*

**§190.40 <u>Criminal Usury in the Second Degree.</u>**

*A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, **at a rate exceeding twenty-five per centum per annum** or the equivalent rate for a longer or shorter period.  Criminal usury in the second degree is a class E felony. (emphasis added)*

**NY CLS Gen. Oblig. §5-521(3) <u>Corporations Prohibited from Imposing The Defense of Usury.</u>**

*(3) The provisions of subdivision one of this section shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law.*

**NY CLS Gen. Oblig. §5-511 <u>Usurious Contracts Void</u>**

*All bonds, bills, **notes,** assurances, conveyances, all other contracts or **securities** whatsoever…whereupon or whereby there shall be **reserved or taken**, or secured or **agreed to be reserved or taken**, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, **shall be void**…*

## PRELIMINARY STATEMENT

This motion is brought pursuant to F.R.C.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. The Notes (the Notes are identical) being sued upon by Plaintiff charge a usurious rate of interest in contravention to New York State Usury Statutes, and are void as a matter of law. Equally so, no equitable remedies are available to plaintiff to save this action as a matter of New York State policy and case law.  The New York State usury laws are both complicated and confusing, sometimes resulting in decisions inconsistent with the usury statutes as well as state appellate division case law. In fact, modern financial instruments have been written by lenders to take advantage of this complexity, making finding Usury more complicated through clever, and sometimes, unrecognizable yet discreet interest disguises.

### Brief History of Usury in New York

Since the founding of this nation, the courts in New York have taken a strong position against enforcing payments with a rate of interest above what is permitted by law. 'The "Statute of Anne" (1713), which fixed a maximum rate of interest at five percent for all loans, was the model followed.' *Franklin W. Ryan, MBA, Ph.D, Usury and Usury Laws (1924).* In New York State, the leading case on this matter is *Curtiss v. Teller*, 217 N.Y. 649 (N.Y. Ct. of Appeals, 1916) in which the court held that usury statutes declare the usurious transaction void and provide for forfeitures and penalties against the usurer.  The decision from the New York Court of Appeals in 1916 was affirmed again in *Szerdahelyi v. Harris, 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986).*  The Court of Appeals in *Szerdahelyi* also analyzed the history surrounding usury laws and noted that the interpretation of the usury statutes in *Curtiss* is correct and conformed most to this state's view on the matter (held that a usurious transaction is *void ab*

*initio*, and a return of excess interest cannot save to the lender the money actually advanced, or the interest due on the loan) (Id.) At the time *Szerdahelyi* was being heard, the New York State Legislature made further revisions to the usury laws due to the evolving complexity of financial crimes such as loan-sharking. Id at ¶¶49-50.  Criminal activities such as loan-sharking have been described by the courts in New York as, "*one of the most heinous, virtually bloodsucking criminal activities of all times." Hammelburger v. Foursome Inn Corp., 54 N.Y.2d 580, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981)*.  The Legislature in New York subsequently enacted comprehensive legislation to deal with this problem, the express intent of which was to "*amend the penal law and the general obligations law, in relation to criminal usury and possession of records of a criminally usurious loan*" (L 1965, ch 328; *see*, 1965 NY Legis Ann, at 49). Usurious loans are void under NY Usury Laws, regardless of whether they violate the civil section of §5-501 **[***See Giventer v. Arnow, 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975), In re Colad Grp., Inc., 324 B.R. 208, 222(Bankr. W.D.N.Y. 2005), Pryor v. Fisher (In re Dimino),429 B.R. 408, 419 (Bankr. E.D.N.Y. 2010)*]]**, or the criminal section under Penal Law §190.40 **[***See Bakhash v. Winston, 2015 NY Slip Op 08966, 134 A.D.3d 468, 19 N.Y.S.3d 887 (App. Div.), Fareri v. Rain's Int'l, Ltd.,* 187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992), *Abir v. Malky, Inc*., 2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.), *Russkaya Reklama, Inc. v. Milman,* 2015 NY Slip Op 25103, 9 N.Y.S.3d 759 (App. Div.)**]**. (held in all these cases that usurious transactions are void as a matter of law).

## Statement of Facts

**The Parties.**

According to the Amended Complaint, plaintiff is a New York "limited liability company." (*See* AMENDED COMPLAINT, DKT#24 at ¶1) However, the Amended Complaint lacks the

2

specificity required by Federal law to assure proper diversity between its members. See _Lenz v._ _Associated Inns & Restaurants Co. of Am.,_ 833 F. Supp. 362, 377 (S.D.N.Y. 1993). The amended complaint properly alleges that defendant "is a Wyoming corporation." Id at ¶2

## The Amended Complaint.

Plaintiff alleges that this Court has original jurisdiction pursuant to 28 U.S.C. §1332(a)(2). Id at ¶3. Plaintiff First Claim seeks $233,446.71 in damages for breach of contract. Id. at ¶¶ 40-45. Plaintiff's Second Claim seeks $233,446.71 for unjust enrichment.  Id. at ¶¶46-49. The Third Claim seeks costs, expenses, and attorney's fees.  Id. at ¶¶50-52. The amended complaint filed in this action also includes exhibits consisting of the Notes (DKT#25 Ex.'s. "B" and "D") and Stock Purchase Agreements (DKT#24 Ex.'s. "A" and "C").

## The 8% Convertible Redeemable Note(s).

### Date of Loans

The parties entered into two 8% Convertible Redeemable Notes executed on March 5, 2015 and August 11, 2015. (See DKT#24, Ex.'s. "B" and "D").

### Amount of Loans

As set forth in the Notes, the March 5, 2015 note's principal amount is $105,000.00.  (Id. Ex. B), and the August 11, 2015 note's principal amount is $105,000.00. (Id Ex. D).

### Face Interest Rate

The face of the Notes provide for a per annum interest rate of 8%.  (Id. at Ex.'s. B and D).

### Conversion Option Discount Percentage

In addition to repayment by defendant in cash, the face of the Notes both provided for a right of conversion into defendant's common stock at the exclusive option of plaintiff.  Paragraph 4 of the face of the Notes state that:

> *"The Holder of this Note is entitled, at its option, at any time and after full cash payment for the shares convertible hereunder, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock")..." Id. at ¶4(a).*

Paragraph 4(a) of both notes also provides for the computation method of the conversion price that operates to guarantee plaintiff's contracted for rate of return regardless of the trading price of the underlying common stock on any given day. Paragraph 4(a) states:

> *"...at a price ("Conversion Price") for each share of Common Stock equal to 60% of the **lowest trading price** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded or any exchange upon which the Common Stock may be traded in the future ("Exchange"}, for the fifteen prior trading days including the day upon which a Notice of Conversion is received by the Company or its transfer agent (provided such Notice of Conversion is delivered by fax or other electronic method of communication to the Company or its transfer agent after 4 P.M. Eastern Standard or Daylight Savings Time if the Holder wishes to include the same day closing price." Id.*

### Reservation of Shares

The Notes required defendant to agree to reserve on account of plaintiff, 8,235,000 shares of Company's common stock under the March 5, 2015 note, and 70,000,000 shares under the August 11, 2015 note for an aggregate reserve of 78,235,000 shares.  The reservation of shares provisions in ¶12 of the Notes state:

> *"The Company shall issue irrevocable transfer agent instructions reserving 8,235,000 (70,000,000 under the Aug Note) shares of its Common Stock for conversions under this Note  (the "Share Reserve").Upon full conversion of this Note, any shares remaining in the Share Reserve shall be cancelled. The Company shall pay all costs associated with issuing and delivering the shares.  If such amounts are to be paid by the Holder, it may deduct such amounts from the Conversion Price." Id. at ¶12.*

### Penalty Provisions

Paragraph 8, on the face of the Notes, sets forth the purported remedies in the event of default. ¶8(n) includes a default interest rate of 24% or the highest rate legally allowed. ¶8(n) states,

4

> *"Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." Id. at ¶8(n)*

¶8(n) also includes daily penalties in addition to the 24% default interest rate, that would accrue at $250.00 per day that the shares are not issued upon conversion. Id. ¶8(n) states,

> *"In the event of a breach of Section 8(k) the penalty shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the Company." Id.*

Furthermore, after the 10th day of failure to issue, the penalty is increased to $500.00 per day.

> *"This penalty shall increase to $500 per day beginning on the 10th day." Id.*

On top of the daily accrual of penalties, the outstanding principal will also increase by 20% for violation of ¶8(n) and 50% for a violation of ¶8(i);

> *"The penalty for a breach of Section 8(n) shall be an increase of the outstanding principal amounts by 20%. In case of a breach of Section 8(i), the outstanding principal due under this Note shall increase by 50%." id. ¶8(n)*

¶8(n) includes a "make-whole" provision that utilizes a formula to determine "loss" being Loss = (high trade price at any time on or after the day of exercise) x (number of conversion shares). Id. This formula does not "make-whole" the lender as a result of a failure to deliver.  Instead it guarantees a fixed rate of return in excess of what lender could have received if defendant issued the shares.  ¶8(n) containing the "make-whole" provision states,

> *"At the Holder's election if the Company fails for any reason to deliver to the Holder the conversion shares by the by the 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the Company written notice indicating the amounts payable to the Holder in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows: Failure to Deliver Loss= [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)].*
> *The Company must pay the Failure to Deliver Loss by cash payment, and any such cash payment must be made by the third business day from the time of the Holder's written notice to the Company." Id.*

**Default Interest Rate(s)**

If an "Events of Default" occurs as is defined in ¶8 of the note, plaintiff has the ability to adjust the interest rate on the outstanding principle balance from 8 percent to 24 percent per annum.  The default interest rate section of the note on its face reads:

> *"Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law" id.*

## LEGAL ARGUMENT

*Legal Standard:*

Defendant brings this motion for dismissal pursuant to Fed. Rules Civ. Proc. R. 12(b)(6).  In *Corbett v. Napolitano, 897 F. Supp. 2d 96, 110 (E.D.N.Y. 2012)* it was held that, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. To determine whether a complaint states a plausible claim for relief, the Supreme Court has suggested a "'two-pronged approach.'" *Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679)*.  This court should begin by 1) "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth*." Iqbal, 556 U.S. at 679* (while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations) 2) "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. In doing so, courts must "'accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" *Vietnam Ass'n for Victims of Agent Orange v.*

6

*Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). Furthermore, in resolving a Rule 12(b)(6) motion, courts may properly consider documents that are deemed included in, incorporated in, or integral to the complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) Courts may consider "the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Holmes v. Air Line Pilots Ass'n*, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010). However, if the underlying claims are based on agreements that are void as a matter of law, then the complaint fails to state a cause of action and a motion pursuant to Fed. R. Civ. Pro 12(b)(6) will be granted.  See *Rothstein v. Isolation Film LLC,* 2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017) where J. Buchwald of this district held that the underlying obligation being sued upon was criminally usurious, void as a matter of law, and dismissed the complaint pursuant to Fed. R. Civ. Pro. §12(b)(6). Should this court find that the underlying transactions on its face are criminally usurious, then it must dismiss the complaint with prejudice and award defendant the relief it seeks.

## POINT I

## THE CONVERTIBLE NOTE IS A LOAN SUBJECT TO NEW YORK USURY LAWS

The usury laws are applicable to only loans or forbearances.  *See Orvis v. Curtiss, 157 N.Y. 657, 661, 52 N.E. 690, 691 (1899), Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp., 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003)*  (held that defense of usury must be founded upon a loan or forbearance of money). The plain language of §5-501 states, "*interest shall not be charged, taken or received on any **loan or forbearance** at a rate exceeding such rate of interest as may be authorized by law **at the time the loan or forbearance is made**.*" NY CLS Gen. Oblig. §5-501. (*Emphasis added*). Entities in the business of providing usurious loans often try to evade the

limitations of the usury laws by labeling what is actually a loan as something else, such as an "investment." However, in order for the transaction to be a loan, the courts look to the substance, rather than the form. *Abir v. Malky, Inc., 2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.)*, *Ujueta v. Euro-Quest Corp., 2006 NY Slip Op 4074, 29 A.D.3d 895, 814 N.Y.S.2d 551 (App. Div.)*, *Feinberg v. Old Vestal Rd. Assocs., 157 A.D.2d 1002, 550 N.Y.S.2d 482 (App. Div. 1990). See also Lowe v Waller, Doug. 736, Court of King's Bench in England, 1756-1793.* Federal courts in this district have continued to rule consistently that a convertible note is a loan. *See LG Capital Funding, LLC v. Sandomedics Int'l Holdings, Inc., 2015 NY Slip Op 32232(U) (Sup. Ct.)* (held that the initial transactions are loans until holder exercises option to convert which in turn would change the status of the loan into an investment)[1] id. A loan consists of 3 basic elements: 1) a lender 2) a borrower and 3) absolute repayment of principal amount. *Id., Sandomedics* at ¶¶24-25. See also *Alibatya v. N.Y. Univ. (In re Alibatya), 178 B.R. 335, 336 (Bankr. E.D.N.Y. 1995)* (held that critical element of loan is the **absolute repayment** of original sum transferred) (transaction becomes an investment once holder bears some degree of risk on the repayment of the initial loan). If the holder never exercises the option, then he is at the very minimum guaranteed his return on the principal balance. Id. The court in *Funding Grp., Inc. v. Water Chef, Inc., 2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct.)* noted, *"In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the [****6] lender" (id. at 434). See Union Capital*

---

[1] Defendant believes the ultimate conclusion is erroneous because the court focused on events subsequent to the inception of the loan, instead of at the time of the loan as is required by the New York Usury law.

_Ltd. Liab. Co. v. Vape Holdings Inc. & Island_, No. 16-cv-1343 (RJS), 2016 U.S. Dist. 72973

_(S.D.N.Y. Mar. 8, 2016)_ (opinion of J. Sullivan affirming the transaction starts out as a loan)[2] id.

      These transactions consist of two loans involving the plaintiff (lender) and defendant

(borrower) for the amounts of $105,000.00.  (See DKT#24, Ex's. "B" and "D".)  The Notes

state:

> "**FOR VALUE RECEIVED**, **Windstream Technologies. (the "Company") promises to pay to the order of LG CAPITAL FUNDING, LLC** _and its authorized successors and permitted assigns_ ("Holder"), _the aggregate principal face amount of One Hundred and Five Thousand Dollars exactly (U.S. $105,000.00) on_ **May 5, 2016"**.( _and August 11, 2016). id._

The plain meaning of the language employed on the face of the Notes shows that defendant was

obligated to pay back the principal amount loaned by or on June 5th, 2016 and August 11, 2016.

The Notes are simply loans with an exclusive option of the plaintiff to convert the loans into

shares at some future time solely for repayment under the loans. _See Union_ (J. Sullivan treated

the note with a principal balance of $75,000 bearing an annual interest rate of 8% as a loan

applying this risk analysis and noted that lender could have redeemed for cash eliminating the

risk on return of initial amount). That on May 5th, 2015 and August 11, 2015, agreements were

formed for a loan of money and what it may become in the future is irrelevant to the usury

analysis.  See _In re Grand Union Co., 219 F. 353 (2d Cir. 1914)_ (held transaction at issue to be a

loan when in writing designated as a sale).  In _Grand Union Co_., the honorable J. Rogers noted

that ordinarily courts will presume that a term has been used correctly in its technical sense but

upon an analysis of the writing in its entirety the facts will reveal the true nature of the

instrument. Plaintiff intended to and did transfer sums of money to defendant on the condition of

absolute repayment, evidenced by the two notes.  The repayment of the loans is either in cash or

---

[2] The only relevant time in analyzing a loan for usury is at the formation of the loan, not events that transpire afterwards.

in stock (at the lenders sole option). The Notes represent loans of money and thus are subject to the New York Usury Laws.

## POINT II

## USURY IS DETERMINED AT THE TIME LOAN IS CREATED IN NEW YORK

The courts are required to analyze usury only at the time the loan is made.  This requirement is taken directly from the plain language of §5-501 that explicitly states, "…*at the time the loan or forbearance is made*." *NY CLS Gen. Oblig. §5-501*. The statute is further supported by State Court decisions that held that usury laws are applied at the time the loan is created and subsequent events thereafter are irrelevant.  *See In re Estate of Jackson, 120 A.D.2d 309, 508 N.Y.S.2d 671 (App. Div. 1986)* (held that the usurious nature of a contract is determined at the time it was entered into). id.  *See also Aquila v. Rubio, 2016 NY Slip Op 50682(U), 51 Misc. 3d 1217(A), 38 N.Y.S.3d 830 (Sup. Ct.)* (affirming decision in *In re Estate of Jackson* that usury is to be determined as of the time that the contract or obligation is entered into) id.   In *Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.), 311 B.R. 781 (Bankr. E.D. Mo. 2004)*, the parties exchanged (transferred) promissory notes for convertible notes with options to convert to preferred stock. (held that in valuing the worth of the option, it was irrelevant what happened subsequent to the "transfer" of the option; the court properly noted that it must examine the transaction at the actual time of transfer or in other words when the option was created). id.

Defendant's Notes were issued to Plaintiff on May 5th, 2015 and August 11, 2015. (See Amended Complaint, DKT#24, Ex's B and D). May 5, 2015 and August 11, 2015 are the dates upon which to determine whether its terms are usurious.

**POINT III**
**THE CONVERSION DISCOUNT VALUE OF 40%, RESERVED TO PLAINTIFF**
**AT THE TIME THE LOANS WERE MADE IS INTEREST TO BE INCLUDED IN**
**USURY ANALYSIS AND VIOLATES NEW YORK USURY LAWS.**

The usury statutes are very clear.  Amounts reserved to the lender (G.O.L §5-511), at the

time the loan is made (G.O.L §5-501) are included as interest charges under the states usury

analysis by the plain meaning of the statute and case law.  It doesn't matter what, if anything

different that the usurer ultimately collects, the analysis is focused only at the time the loan is

made pursuant to G.O.L §5-501.  Courts have held that convertible notes are hybrid financial

instruments containing both an unsecured debt and an option component with its own value.

_Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P._ _(In re Bridge Info. Sys.), 311 B.R. 781_

_(Bankr. E.D. Mo. 2004)_ **(**held that unsecured debt component and option in convertible note have

discrete values and thus should be valued separately) _See_ _Hillair Capital Invs., L.P. v. Integrated_

_Freight Corp.,_ _963 F. Supp. 2d 336 (S.D.N.Y. 2013)_ (held that value of stock option is critical in

calculating true amount of loan as well as effective interest rate)  See also, _Sabella v. Scantek_

_Med., Inc.,_ _2009 U.S. Dist. 88170 (S.D.N.Y. Sep. 21, 2009_) (affirming holding that value of

common stock given to lender should be taken into account when calculating interest rates)  The

underlying reasoning of these decisions is that the company issuing stock is agreeing to give

something up of value to the lender. _(See_ _In re Bridge Info. Sys,_ noting possible proceeds from

sale of stock option to third party as "opportunity cost") id.    In N.Y. a loan is usurious when the

lender is entitled to the principal balance along with a legal rate of interest plus additional

payment contingent on an event that is out of borrower's control.  _Phlo Corp. v. Stevens, 00 Civ._

_3619 (DC), 2001 U.S. Dist.17490, at *12 (S.D.N.Y. Oct. 25, 2001)_ (noting that this "contingent

right", referring to stock option, is something of value and should be considered in interest

calculation) id.  In _Custom Chrome, Inc. v. Commissioner, 217 F.3d 1117 (9th Cir. 2000),_ the

court properly stated that warrants are equivalent to options and in valuing them should be treated as original issue discount (OID). (held that any excess to lender from an OID transaction should be characterized as interest) id.  See also _AWG Leasing Tr. V. United States_, _592 F. Supp. 2d 953 (N.D. Ohio 2008)_ (noting that original issue discount is the difference between the redemption price at maturity and issue price and therefore a type of interest) id. Defendant contends that LG has "disguised" interest charges in an attempt to evade the usury laws as the lender did in _Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc._, _2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.)_  (held the $200,000.00 deposit "against future commitment fee" an additional interest charge and in violation of criminal usury) id.

Plaintiff has reserved to itself a 40% discount as to the market price of defendant's public stock at, and, at all times from the inception of the loans, until all amounts under the loans are repaid by way of a cash payment, or the conversion of debt into stock.  The 40% discount is reserved interest that has a separate value that is legally required to be included in the usury analysis. The Note provides that **plaintiff has the sole option** to convert the principal balance into shares of defendant's common stock.  (See DKT#24, Ex. B and D at ¶4(a)).  ¶4 of the Note states,

> _"The Holder of this Note is entitled_, **_at its option at any time_** _and after full cash payment for the shares convertible hereunder_, **_to convert all or any amount_** _of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") at a price ("Conversion Price") for each share of Common Stock_ **_equal to 60% of the lowest trading price_**_…"_

Under this provision of the Note, plaintiff is entitled to acquire defendant's company stock at a fixed discount of 40% whenever is so chooses.  Regardless of the trading price of the stock on any given day, ¶4(a) guarantees this fixed rate on the **lowest** trading price from the prior 2 weeks upon the notice to convert.  Id.  In other words, there is no risk of loss to plaintiff upon

conversion, which is normally a factor involved in any investment. Under ¶4(a) plaintiff can exercise this conversion right at any time and for any amount of the principal balance. The right to convert is exclusively in the control of the plaintiff.  As the court noted in *Blue Wolf Capital Fund II, L.P.*, if the event is entirely in the control of the lender then it should count towards additional interest charges. Id. Additionally, the 40% stock option discount is an OID and should be treated as such.  The option component of the note includes an original issue discount because defendant is issuing a debt instrument containing a discounted stock option that is clearly reflected at the time the principal balance is due as in *AWG Leasing Tr. v. United States*. Plaintiff will always receive 40% more on each dollar that it converts into stock under the note because it reserved that 40% discount at the time the loan was entered into.  In other words, plaintiff has reserved to itself 40% more in actual value at the time the loan was made, insulating itself from all risk, even at the time of conversion. Just as in *Phlo Corp. v. Stevens* and *Custom Chrome, Inc. v. Commissioner*, being an OID, the court must include the 40% discount rate in its interest computations that lender reserved to itself at the time the loan was made.

**POINT IV**
**THE VALUE OF THE RESERVATION OF SHARES RESERVED TO PLAINTIFF AT THE TIME OF THE LOANS ARE INTEREST UNDER NY LAW AND VIOLATES NEW YORK USURY LAWS.**

The notes reserve 8,235,000 and 70,000,000 shares respectively, at the time that the loans were made rendering both loans criminally usurious. (See DKT #24, Ex's. B and D at ¶12). The defendant was required to and did issue irrevocable transfer agent instruction letters reserving these shares to plaintiff (*See Decl. of Dan Bates, Ex's 3 and 4*). The irrevocable transfer agent letters effectively sequestered and reserved that stock to make it available on account for Plaintiff, to effectuate future repayment conversions of the loans into equity. The usury statute's specific language states "*reserves, or agrees to reserve to the lender*". The quantity of stock so

reserved is 4 times the amount of stock that plaintiff could convert into, at its fixed 40% discount to market.

§5-511 states,

"*whereupon or whereby there shall be **reserved or taken**, or secured or **agreed to be reserved or taken**, **any greater sum, or greater value, for the loan** or forbearance of any money…shall be void…*"

The plain meaning of §5-511 prohibits the actions taken by plaintiff.  ¶12 of the Note states,

"*The Company shall issue irrevocable transfer agent instructions **reserving 8,235,000 (70,000,000 under the August note) shares** of its Common Stock for conversions under this Note…The company should at all times **reserve a minimum of four times the amount of shares required** if the note would be fully converted.*"  (See First Amended Complaint, DKT #25 Ex. "B" at ¶12 and Ex. "D" at ¶12)

See <u>Funding Grp., Inc. v. Water Chef, Inc.</u>, *2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct.)* (held that loan violated civil and criminal usury statutes of N.Y. when lender reserved himself an illegal rate of interest) id.

   The plain language of ¶12 of the Notes read in accordance with §5-511 demonstrates that the Notes are usurious on their faces.  Plaintiff in this case has "*reserved*" a "*greater sum*" for the loans issued to defendant.  On the date the Notes were entered into (May 5, 2015 and August 11, 2015), defendant's common stock was trading at a price of $.08 and $.012 per share respectively.  (*See Decl. Dan Bates, Ex's.5 and 6*).  The value of the reservation of shares reserved to plaintiff on the May 5, 2015 was $658,800.00 (650%) and on August 11, 2015, $840,000.00 (840%) based on the loan amounts of $105,000.00 on each date.  That is slightly over 25% of the value of the respective original loan amounts to defendant under <u>Blue Wolf</u>, *Id.* This court must recognize that the reservation of shares in ¶12 of the note constitutes interest and thus must be computed together with all other interest charges that plaintiff has embedded within the Note.

14

<u>**POINT V**</u>
<u>**THE DEFAULT RATES OF INTERST CHARGED AT THE TIME THE LOANS WERE**</u>
<u>**MADE VIOLATES NEW YORK USURY LAWS**</u>

The existence of a default provision does not automatically render a contract usurious.

However, in this case ¶8(n) of the Notes contain such provisions and imposes penalties that are

not permissible by law.  Opposing counsel will claim that the usury laws do not apply to

defaulted obligations but they would be ignoring a recent decision from this district. *See Madden*

*v. Midland Funding, LLC, No. 11-CV-8149 (CS), 2017 U.S. Dist. 27109 (S.D.N.Y. Feb. 27, 2017)*

(held that the criminal usury cap setting the maximum interest rate at 25% does apply to

defaulted obligations). The decision in *Madden* is the proper application of this state's usury

laws. The Default section of the note at ¶8(n) states:

*"Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or,*
*if such rate is usurious or not permitted by current law, then at the highest  rate of interest*
*permitted by law." Id*

Within that default section, there are penalties (disguised interest) that constitute interest

charges that cause the stated default interest rate of 24% to actually exceed the criminal usury

cap depending on the duration of the event of default.  ¶8(n) states,

*"In the event of a breach of Section 8(k) the penalty shall be **$250 per day** the shares are not*
*issued beginning on the 4th day after the conversion notice was delivered to the Company.*
*This penalty shall increase to **$500 per day** beginning on the 10th day. The penalty for a breach*
*of Section 8(n) shall be an **increase of the outstanding principal amounts by 20%.** In case of a*
*breach of Section 8(i), **the outstanding principal due under this Note shall increase by 50%.***
*Further, if a breach of Section 8(m) occurs or is continuing after the 6 month anniversary of the*
*Note, then the Holder shall be entitled to use the lowest closing bid price during the delinquency*
*period as a base price for the conversion...If this Note is not paid at maturity, the*
***outstanding principal due under this Note shall increase by 10%.**" (See DKT #24, Ex's. "B"*
*and "D"at ¶8(n))*

This court only needs to look to the four corners of the Note to find that the default provisions are usurious.  *See Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp., 310 F. Supp. 2d 556 (S.D.N.Y. 2003).*

The stated default interest rate under the note is 24%, just below the criminal usury cap. The Note states that if defendant is not able to issue the shares within 3 days from the notice to convert then, "*…the penalty shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered…"*  Additionally, "*…penalty shall increase to $500 per day beginning on the 10th day."* (See DKT #24, Ex. "B" and "D" at ¶8(n)) Upon default, plaintiff was already entitled to repayment of the outstanding balance on the default date along with accrued interest at the rate of 8% per annum. After the breach, plaintiff was entitled to a 24% interest rate in addition to the daily penalties and the make-whole provisions plus an increase of the principal amount, all under the default provision of the note. (this amount is including the 10% outstanding balance increase upon maturity).  In *The Board of Managers of the Park Avenue v Citibank*, 100066/2013, (N.Y. Supreme Ct. 2015) The court ruled that the penalty was not a loan, and therefore not normally subject to usury laws; however, because the penalty was so high in proportion to the amount due, the court found the penalty to be "confiscatory" and a violation of "public policy" as illustrated by New York's regard for interest of over 25% as "criminal" in nature. In fact identical provisions have been struck down in this district under the same theory. (See *Union v Vape*). The Honorable J. Seibel recently ruled in *Madden* that the usury defense does apply to defaulted obligations, supporting this state's position against lenders implementing excessive rates of interest. If the initial loan is void because of usury, then anything flowing from it is equally void, including default rates of interest. The court in *Bristol Inv. Fund, Inc.* made the all too common mistake involved in usury

cases by analyzing the time of default or breach as opposed to looking at the time of execution of the written instrument and what the lender reserved to itself under the loan. The default provisions are clearly usurious on its face and recent federal decisions in this district support defendant's position.

## POINT VI
## USURIOUS INTENT IS CLEAR FROM THE FOUR CORNERS OF THE NOTES

Usurious intent can be found by looking at the 4 corners of the Note and usurious intent is found as a matter of law. See _Blue Wolf Capital Fund II, L.P._ (held that if usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law). Intent is a critical element in a usury analysis. It is well-established that even if the lender didn't mean to violate the usury laws, if the note charges an interest rate in excess of the statutory rate, then it is immaterial whether lender intended to do so or not. In _In re Rosner, 48 B.R. 538 (Bankr. E.D.N.Y. 1985) See also Fareri v. Rain's Int'l, Ltd., 187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992)_ (held that transaction and supporting documents were void because as stipulated by the parties, the agreement was usurious on its face, thus usurious intent can be implied) id. Courts have consistently ruled that when usury is determined to exist, that intent is implied. _Venables v. Sagona, 2011 NY Slip Op 5261, 85 A.D.3d 904, 925 N.Y.S.2d 578 (App. Div.) See also Abir v. Malky, Inc., 2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.) and Curtiss v. Teller, 157 A.D. 804, 143 N.Y.S. 188 (App. Div. 1913)_ (noting that **all** usurious agreements will be void and unenforceable).

In _In re Rosner_, the court noted that where the usurious intent is not found on the face of the note then usury becomes a question of fact. However, the "conversion discount option" and "share reserve requirement" as well as the "Default Remedies" as expressly stated in the Note, sets the interest rate well above the allowed 25% and establishes, as a matter of law, plaintiff's

intent to charge a usurious rate of interest. Plaintiff's intent to charge a criminally usurious rate is easily gleaned from the four corners of the Note within the meaning of the usury statutes as it did in *Blue Wolf*.

## POINT VII
## CRIMINALLY USURIOUS LOANS IN NEW YORK ARE VOID UNDER G.O.L. §5-511

It is well settled law in New York that criminally usurious loans are *void ab initio*.[3] *See Hufnagel v. George, 135 F. Supp. 2d 406 (S.D.N.Y. 2001)* (held that loan was void *ab initio* as a matter of law pursuant to §190.40 and §190.42). The court in *Hufnagel* relied on the New York Court of Appeals decision in *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986) (held that all usurious transactions are void *ab initio* and the exception in §5-511 is only applicable to banks or savings associations). See *Rothstein v. Isolation Film LLC, 2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017)* (court properly noted that recent New York decisions have voided criminally usurious transactions after *Blue Wolf*). See *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.* (held that unless banker or lender association, criminally usurious transaction along with all collateral agreements are void and unenforceable under G.O.L. §5-511).

Plaintiff's Note violates G.O.L §5-501, §5-511 and Penal Law §190.40. The effective interest rate is well above the 25% per annum maximum cap imposed by §190.40. To determine that criminally usurious loans are not void *ab initio* would require this court to ignore the New York Appellate Court decisions that unanimously state that a violation of Penal Law §190.40 voids the transaction *ab initio* pursuant to G.O.L. §5-511. (see Addendum). Those decisions aligned with *Blue Wolf* are the correct and the proper application of this state's usury laws. The

---

[3] There is no precise definition of "well-settled" so this office has used a threshold of 75% of cases that held that criminally usurious loans are void *ab initio*. While this issue may be in question, it's the misapplication of the law and the policy behind it that has created this issue through those minority adverse decisions. (See Addendum infra.)

law today pertaining to usury remains basically unchanged over its 142-year history in New York, that loans charging interest rates exceeding the usury limits are void as a matter of law and anything over the criminal usury level, violates New York's public policy.  This is evident by the specific inclusion of §190.40 and §190.42 into the General Obligations Laws reflecting the legislature's intent to expand grounds for relief and if applicable, impose additional sanctions on the usurer depending on the rate charged (criminal penalties).   The confusion surrounding the issue of whether criminally usurious contracts are void stem from the fact that prior decisions have improperly categorized usury into two "types."  The New York Legislature did not intend to create two different "types" of usury but instead enacted the criminal provision to create two "levels" of usury in a civil context.  The legislation did this specifically to insure that entities that are capable of carrying out usurious loans to a greater degree cannot escape the grasps of §5-501 and §5-511 and intentionally and additionally punish those to a greater extent for charging rates exceeding the criminal usury threshold.  Even the plain language of each of the G.O.L statutes state in its headings §5-501 **"Usury Forbidden"**, and §5-511 **"Usurious Contracts Void"**. They do not bifurcate usury into criminal or civil or say one is void, and not the other. Even the plain language of §5-501(6)(a)-(b) demonstrates that the legislature intended for different "levels" of usury under the General Obligations Laws since the civil level (16%) does not apply if the amount of the loan exceeds $250,000.00.  The same "civil" statute also makes clear that §190.40 and §190.42 do not apply to loans over $2,500.000. Those are the legislative usury threshold levels set by New York's Legislature.

### <u>The 2002 Second Circuit Court of Appeals Decision</u>

The Second Circuit Court of Appeals last addressed this issue (in dicta only) in 2002 in the case <u>*Brodie v. Schmutz*</u> *(In re Venture Mort. Fund, L.P.)*, 282 F.3d 185 (2d Cir. 2002). Prior

to the _Brodie_ case, courts in this district have unconditionally recognized that usurious loans are

void as a matter of law. However, in _Brodie_, the 2nd Circuit raised the seemingly undecided

question of whether the application of the criminal usury statute provides for voiding a

criminally usurious loan because §190.40 does not expressly say such loans are void. The

Second Circuit in _Brodie_ seemingly focused on the language solely in §190.40 instead of looking

at the "body of usury law" that would have to include the General Obligations Laws, Sec. 5. The

court in _Brodie_ stated, "_the statutory provisions that bear upon whether a criminally usurious_

_loan is void (without answering the question) are set forth in the margin_."  However, since

_Brodie_, there is still some obvious confusion among some Federal Courts in this District, as well

as some New York State Supreme Courts regarding this issue. The courts that have held that

criminally usurious loans were not void are a small minority of cases that disregarded the

historical analysis in _Szerdahelyi_ as well as all of the NYS App. Div. Courts decisions since

_Brodie_. (_See Addendum to this brief_). This confusion ostensibly is derived from the complicated

nature of the body of New York usury law, the courts overall reluctance to find criminal usury,

and the less than stellar drafting of the usury statutes themselves by the Legislature.

However, after _Brodie_, **all of the N.Y.S. Appellate Division cases that addressed this**

**issue unanimously held that a loan that violates §190.40, is void _ab initio_ under G.O.L §5-**

**511**. _(See Addendum to this Brief)._  _Brodie_ specifically referenced _Hufnagel_ that voided a

criminally usurious loan due to public policy concerns.  Those public policy concerns were

incorporated into the General Obligations Laws at a time when loan-sharking and other evolving

financial crimes were becoming more sophisticated.  For that reason, the legislature intended the

penalties for criminal usurers to be harsh. In _Brodie,_ the court noted that the limit to voiding a

usurious loan is on a loan with a principle amount exceeding $2.5 million simply because it

would upset the foundations of basic financial arrangements.  Defendant points out to this court

that there is no legislative difference between what's called "civil" usury and "criminal" usury

when it comes to §5-511 and its avoidance feature. Usury is usury, and the Legislature saw fit to

make two "levels" of usury in response to growing loan-sharking in the state, one that exceeds

16%, and the other that exceeds 25%. The only real differences between the two are simple.

Corporations cannot plead civil usury as a defense (but corporations can plead criminal usury as

a defense – see G.O.L §5-521(3), and that the criminal usury statute has a criminal penal

component above the forfeiture penalty under G.O.L §5-511 (a harsher punishment – jail time).

G.O.L §5-501 caps the maximum amount upon which to assert a claim under §190.40 at

$2,500,000.00. The plain language of §190.40 as read with §5-501states that anything below

$2.5 million is subject to criminal usury and once found, the Appellate Division Courts in New

York unanimously hold that G.O.L §5-511 voids the transaction.  This is the only and proper and

consistent reading of the usury laws. The results at the NYS Appellate Division level are

consistent with the original intent of the legislature in drafting the usury laws as explained in

*Curtiss* and *Szerdahelyi*.

### POINT VIII
### NO EQUITABLE RELIEF FOR USURIOUS TRANSACTIONS

It is well settled law that a person coming to court with unclean hands is not afforded

any equitable remedies" *Blue Wolf Capital Fund II, L.P.* (held that those found to be

charging criminally usurious rate of interest is not entitled to any form of equitable relief)

When it comes to criminal usury, intent to charge a criminally usurious rate is implied based

on the loan documents, and as such, implies wrongdoing. This is because the lender intended

to lend on a usurious note, and the borrower agreed to accept the terms of the usurious

note.  There is no mistake (as the case law requires for equitable relief).  Equitable relief in

the form of reformation, unjust enrichment, and any other equitable remedy is not available to Plaintiff. *Rothstein v. Isolation Film LLC* The court properly noted in *Rothstein* that, "*However, where a plaintiff charges a criminally usurious rate, equitable relief is unavailable.*" *At*8* (held that usurer's claim for unjust enrichment is not applicable since equitable relief is not available to one charging usurious rate)  In *Blue Wolf Capital Fund II, L.P.*, the court also properly dismissed the plaintiff's plea for reformation of the agreement as this would go against the plain language of G.O.L. §5-511.  This court cannot ignore a fundamental rule of law which states, "*The equitable maxim that he who comes into equity must come with clean hands…*" *Don Lia v. Saporito*, 909 F. Supp. 2d 149, 173 (E.D.N.Y. 2012)  See also *Columbo v. Columbo*, 2008 NY Slip Op 2952, 50 A.D.3d 617, 856 N.Y.S.2d 159 (App. Div.) (held that a party seeking equitable relief must not have unclean hands)  Plaintiff is also attempting to recover based on a theory of equitable relief when its own conduct bars it from asserting such a claim.  See *Balaber-Strauss v. Murphy (In re Murphy)*, 331 B.R. 107, 135 (Bankr. S.D.N.Y. 2005) (held that equitable relief may be denied where party applying for such relief is guilty of conduct involving fraud, unconscionability, or bad faith related to the matter at issue)

Plaintiff's second claim for relief is for unjust enrichment.  (See DKT #24, at ¶¶46-49)  That since plaintiff has charged a criminally usurious rate of interest on both $105,000.00 loans, plaintiff is not entitled to assert a claim for unjust enrichment. This court must follow the reasoning in *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 740, 586 N.Y.S.2d 240, 242, 598 N.E.2d 7, 9 (1992) in which the court stated,

"*The consequences to the lender of a usurious transaction can be harsh: the borrower is relieved of all further payment--not only interest but also outstanding principal, and any mortgages securing payment are cancelled. In effect, the borrower can simply keep the borrowed funds and*

*walk away from the agreement. Moreover, the borrower can recover any interest payments made in excess of the legal rate (General Obligations Law § 5-513). New York usury laws historically have been severe in comparison to the majority of states (1960 Report of NY Law Revision Commission, 1960 Legis Doc No. 65, at 77), reflecting the view of our Legislature that the prescribed consequences are necessary to deter the evils of usury."id. at \*7*

In *Rothstein,* J. Buchwald of this district denied plaintiff's request for reformation noting that the party was never entitled to such relief (id. at \*8). The consequences for a usurer are meant to be harsh and the New York Legislature, in drafting the usury laws, never intended to allow courts to afford equitable relief to the usurious lender.  In *Szerdahelyi v. Harris,* the court stated, "…*they cannot recover either the money loaned or the interest remaining due in this transaction*." At \*517.  The plain language of the opinions in *Rothstein* and *Szerdahelyi* demonstrates that the usurious lender is not entitled to any relief, including equitable remedies. New York is clear on its position regarding usury, and the language in both *Szerdahelyi* and *Seidel* supports that forfeiture is necessary to deter the "evils" of modern day loan-sharking. Prior decisions such as that in *Carlone v. Lion & The Bull Films, Inc*., 861 F. Supp. 2d 312 (S.D.N.Y. 2012), have correctly analyzed the history and the intent of the legislature in drafting the usury laws but ruled inconsistently with its own analysis.  None of the cases mentioned in that opinion stated that the effect of the usury laws is to reform the usurious terms of the contract.  The purpose of §5-511 is to **void the entire transaction as well as any collateral agreements**.  If this court were to entertain the idea of reformation following the decision of *Carlone*, then the original intent of the legislature is of no value as the criminal usurer would face little to no consequences or punishment in a civil case.  Following the decision of *Carlone* would only invite entities to get away with trying to create usurious transactions since they are not running the risk of forfeiting the original amount loaned.  The legislative intent in New York

is clear. The statutes are specifically drafted and enacted to punish the lender that lends at a

usurious rate. Any decision allowing any lender that violates the usury laws of New York to be

made whole via an equitable remedy would render the legislative intent superfluous.

### **CONCLUSION**

The 150 year history of, and current New York State Usury laws, requires that this court

look only at the time the transaction was entered into to determine usury. That these transactions

were loans of money on May 5, 2015 and August 11, 2015 that charged and reserved to the

plaintiff, rates of interest exceeding 25% with a definitive and certain repayment without risk to

the lender. That at the time of the loans, property with substantial value was reserved to lender

which in this case was both an option to convert into public stock of the defendant at a fixed 40%

discount, as well as a reservation of stock, both charged and reserved at the time of the

transaction on account of and to the lender. That such charges embedded in the Notes prove, as a

matter of law that Plaintiff intended to charge criminally usurious interest rates. Based on the

foregoing, this court must find that the notes are *void ab initio* as in violation of the New York's

Usury Laws, that the plaintiff has no claim for any equitable relief, and that defendants counsel

be awarded attorney's fees and costs in defense of this action.

Respectfully submitted,

**THE BASILE LAW FIRM, P.C.**
*Attorneys for Defendant*
68 S. Service Rd., Ste. 100
Melville, New York 11747
Tel. 516.455.1500
Fax. 631.498.0478
mark@thebasilelawfirm.com

**By:**   /s/Mark R. Basile
          Mark R. Basile, Esq.
          Juris. (MB2201)

24

**ADDENDUM**

| VOID under §190.40 | NOT VOID under §190.40 | DISMISSED CASE 190.40 |
|---|---|---|
| **21 Cases** | **5 Cases** | **6 Cases** |
| **7 NY Sup. Ct. Cases**<br>**4 Fed. Ct. Cases**<br>**8 NY App. Div. Cases**<br>**1 NY Ct. of Appeals Case** | **1 NY Sup. Ct. Case**<br>**4 Fed. Ct. Cases**<br>**0 NY App. Div. Cases**<br>**0 NY Ct. of Appeals Cases** | **2 NY Sup. Ct Cases**<br>**3 Fed. Ct. Cases**<br>**1 2nd Cir. Ct. Appeals Case** |
| Bales v. Pfeifer,<br>Sup. Ct.- (Nassau -2005) | Carlone v. Lion & The Bull<br>Films, Inc. S.D.N.Y.- (2012) | Bakis v. Levitin,<br>Sup. Ct. – (2004) |
| Hufnagel v. George<br>Fed- S.D.N.Y. (2001) | Koenig v. Salazer Enters<br>Sup. Ct.- (2009) | Am. Equities Group, Inc. v.<br>Ahava Dairy Prods. Corp.<br>S.D.N.Y.- (2004) |
| Szerdahelyi v. Harris<br>N.Y2d (NY Ct. of App-1986) | Cousins v. Pereira (In re<br>Cousins) S.D.N.Y. - (2010) | Hillair Capital Invs., L.P. v.<br>Integrated Freight Corp.,<br>S.D.N.Y. -(2013) |
| Rothstein v. Isolation Film<br>LLC S.D.N.Y. - (2017) | In re Merhi<br>Bankr. E.D.N.Y.- (2014) | Phlo Corp. v. Stevens,<br>S.D.N.Y.- ( 2001) |
| Blue Wolf Capital Fund II,<br>L.P. v. Am. Stevedoring Inc.<br>(App. Div.1st Dept.-2013) | BH Sutton Mezz LLC v.<br>Sutton 58 Assocs. LLC (In re<br>BH Sutton Mezz LLC)<br>U.S. Bankr. S.D.N.Y. -(2016) | Brodie v. Schmutz (In re<br>Venture Mort. Fund, L.P.)<br>Fed. Ct.)- 2d Cir. (2002) |
| Bakhash v. Winston<br>(App. Div.- 1st Dept.–2015) | | Funding Grp., Inc. v. Water<br>Chef, Inc. Sup. Ct.- (New<br>York - 2008) |
| In re Rosner,<br>Bankr. E.D.N.Y.- (1985) | | |
| Densen v. Ahsley<br>Sup. Ct.- (2011) | | |
| Fareri v. Rain's Int'l, Ltd.<br>(App. Div. 2nd Dept.- 1992) | | |
| Murlar Equities P'ship v.<br>Jimanez. Sup. Ct. (Bronx -<br>2016) | | |
| Selcuk v. Yuran<br>Sup. Ct.- (New York -2009) | | |
| Manganello v. Park Slope<br>Advanced Med. PLLC<br>Sup. Ct.-(Suffolk - 2014) | | |
| Sasidharan v. Piverger<br>Sup. Ct.-(Kings - 2014) | | |

| | | |
|---|---|---|
| Umland v. Nole<br>N.Y. App. Div.-(2003) | | |
| Thompson v. Mullings<br>Sup. Ct.-  (2005) | | |
| Abir v. Malky, Inc.<br>App. Div, 2nd Dept..-(2009) | | |
| Malespin v. AB<br>N.Y.S.2d Civ. Ct.-(2005) | | |
| Russkaya Reklama, Inc. v.<br>Milman N.Y.S.3d App. Div.<br>2nd Dept. - 2015) | | |
| Case Cash Funding, LLC v.<br>Gilberg, (App. Div. 2nd Dept.-<br>2017) | | |
| Tripoint Global Equities,<br>L.L.C. v. Fasolino<br>S.D.N.Y.-(2013) | | |
| Venables v Sagona<br>(App. Div. 2nd Dept. -2011) | | |