**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LG CAPITAL FUNDING, LLC

                                        Plaintiff,

                v.

WINDSTREAM TECHNOLOGIES, INC.

                                        Defendant.

**Civil Action No.:** 17-cv-4394-DAB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6).**

GARSON, SÉGAL, STEINMETZ, FLADGATE LLP
Kevin Kehrli
Chris Han
Michale Steinmetz
164 West 25th Street
Suite 11R
New York, NY 10001
(P): (212) 380 – 3623
(F): (347) 537 – 4540
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF RELEVANT FACTS ......................................................................1

III. LEGAL STANDARD .......................................................................................................2

IV. ARGUMENT ......................................................................................................................7

    A. The Discounted Price to Acquire Stock is Not Interest ................................7

    B. The Share Reserve is Not Interest ........................................................15

    C. The Post-Default Interest Rate is Irrelevant to the Usury Determination ...........17

    D. Defendant Cannot Prove the Intent Necessary for a Finding of Usury ................20

    E. Even if the Court were to Find Provisions of the Notes Usurious, the Loans

        Would be Adjusted, Rather than Voided ................................................21

V. CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

Cases                                                                                                  Page(s)

*AWG Leasing Tr. v. United States*, 592 F. Supp. 2d 953 (N.D. Ohio 2008) .........................................**10, 12**

*Beaufort Capital Partners, LLC v. Oxysure Sys.*, 2017 U.S. Dist. LEXIS 32335
(S.D.N.Y. 2017)..........................................................................................................**4, 13, 14, 16**

*BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr.
LEXIS 4113 (S.D.N.Y. 2016)..................................................................................**5, 6, 21, 22**

*Blue Wolf Capital Fund II v. American Stevedoring, Inc.*, 105 A.D.3d 178 (1st Dep't 2013)..**10, 11, 12, 17**

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556 (S.D.N.Y. 2003) .............................**19**

*Custom Chrome, Inc. v. Commissioner*, 217 F.3d 1117 (9th Cir. 2000) ..........................................**9, 10, 12**

*Funding Group, Inc. v. Water Chef, Inc.*, 19 Misc. 3d 483 (N.Y. Sup. 2008)....................................**17, 22**

*Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013)...............**7, 8**

*In re General American Communications Corp.*, 73 B.R. 887 (S.D.N.Y. 1987).........................................**4**

*Koenig v. Slazer Enters.*, 27 Misc. 3d 1212(A) (Sup. Ct. N.Y. 2010).........................................................**22**

*LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 Misc. LEXIS 4294 (N.Y. Sup.,
Kings Co.) ..........................................................................................................**4, 5, 14, 16**

*Llewellin v. Asset Acceptance, LLC*, 2015 U.S. Dist. LEXIS 145437 (S.D.N.Y. 2015) ...........................**19**

*Madden v. Midland*, 2017 U.S. Dist. LEXIS 27109 (S.D.N.Y.) .......................................................**5, 18, 19**

*Mallis v. Bankers Trust Co.*, 615 F.2d 68 (2d Cir. 1980) .......................................................................**3, 4**

*Olivia v. Town of Greece*, 630 Fed. Appx. 43, 44 (2d Cir. 2015).............................................................**6**

*Peltz v. Welsh, Carson, Anderson & Stow VII, L.P. (In re Bridge Info. Sys.)*, 311 B.R. 781 (Bankr. E.D.
Mo. 2004).............................................................................................................................**8**

*Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 (S.D.N.Y. 2001)....**8, 9, 12, 16, 17**

*Prof. Merch. Advance Capital, LLC v. C Care Servs., LLC*, U.S. Dist. LEXIS 92035 (S.D.N.Y. 2015) ...**22**

*Prowley v. Hemar Ins. Corp. of Am.*, 2010 U.S. Dist. LEXIS 45249 (S.D.N.Y. 2010) ............................**19**

*Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690
(S.D.N.Y. 2009) ..................................................................................................**3, 4, 5, 22**

*Rothstein v. Isolation Film LLC*, 2017 U.S. Dist. LEXIS 59133 (S.D.N.Y. 2017) .......................................**6**

*Sabella v. Scantek Med., Inc.*, 2009 U.S. Dist. 2009 (S.D.N.Y. 2009)...............................................**3, 8**

*Star Funding, Inc. v. Vault Minerals, LLC*, 2017 U.S. Dist. LEXIS 128336 .........................................**6, 22**

*Union Capital LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445
(S.D.N.Y. 2017) ..................................................................................**3, 4, 12, 13, 14, 16, 20**

## T<small>ABLE OF</small> S<small>TATUTES</small>

Statute                                                                                    Page(s)

*11 U.S.C. §547* .......................................................................................................**8**

*Fed. R. Civ. P. 12(b)(6)* ...................................................................**2, 6, 10, 12, 17, 20**

*N.Y. Gen. Ob. L. §5-501* ................................................................................**2, 3, 11, 17**

*N.Y. Gen. Ob. L. §5-511* ...............................................................................**3, 11, 15, 17**

*N.Y. Gen. Ob. L. §5-521* ............................................................................................**3**

*N.Y. Pen. L. §190.40* ................................................................................................**3, 5, 17**

## I.    INTRODUCTION

Plaintiff, LG Capital Funding, LLC ("Plaintiff" or "LG"), by and through the undersigned counsel, respectfully submits this Opposition to Defendant, Windstream Technology, Inc.'s Motion to Dismiss.

## II.    STATEMENT OF RELEVANT FACTS

The facts of this matter are simple and undisputed.  On March 5, 2015 and August 11, 2015, the parties entered into two Securities Purchase Agreements ("SPA 1" and "SPA 2"). Defendant accepted Plaintiff's money on two occasions, and pursuant to SPAs 1 and 2, issued to Plaintiff two 8% Convertible Redeemable Notes with face values of $105,000.00 ("Note 1" and "Note 2," or collectively, the "Notes"). Defendant admits that it issued the Notes, Dkt. 27, ¶2, and does not dispute that Plaintiff funded the Notes pursuant to the terms of the SPAs.

The Notes provided Plaintiff with the right to convert portions of the Notes' principal and interest into Defendant's common stock at a discount to the market price, at which point Defendant would be relieved of its obligation to repay those portions upon maturity.  To ensure the availability of shares in the event that Plaintiff exercised this right, Defendant was required to reserve designated amounts of shares.  Upon exercising the conversion right, those designated portions would be exchanged for shares, at which point Plaintiff would became a shareholder in the Defendant corporation free to hold or sell the shares.  Plaintiff exercised this right on three occasions between October 20, 2015 and December 22, 2015 in relation to Note 1.  Defendant delivered the shares each time, leaving a principal balance on Note 1 of $92,500.00.  No conversions were executed in relation to Note 2, so the principal balance remained at $105,000.00.

1

It is also indisputable that Defendant defaulted on the Notes.  On March 5, 2016, Note 1 reached maturity, becoming due and payable.  This constituted an "Event of Default" under Section 8(a) of Note 1, and by virtue of the cross-default provision of Section 8(a) of Note 2, also constituted an Event of Default under Note 2.  Note 2 also reached maturity on August 11, 2016, causing an additional Event of Default.  Last, Defendant caused an additional Event of Default under Section 8(m) of each Note by failing to remain current in its Securities and Exchange Commission ("SEC") filings.  As of April 15, 2016, Defendant has been delinquent with the SEC.  To date, Defendant has made no payments toward the Notes.

Defendant does not dispute these facts.  Instead, it first asks the Court to determine that the right to obtain shares at a discount and the share reserve established in conjunction with that right, should be categorized as charged "interest" for the purposes of a usury determination.  Next, it asks the Court to determine that Plaintiff intended for the Notes to be usurious.  Finally, it asks the Court to void the Notes in their entireties on the basis of the prior findings.

Thus, the question before the Court is whether it should expand the reach of New York's usury laws to include various items never before included, such that a sophisticated, publicly-traded corporation is able to walk away from its obligation to repay funds.  It should not.

## III.   LEGAL STANDARD

While Defendant purports to bring its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, it is actually asking the Court to determine that Defendant has met each element necessary to prove its affirmative defense of criminal usury.

There are two types of usury defenses – civil usury and criminal usury.  The distinction between the two is important.  §5-501 of the New York General Obligations Law, the civil usury

statute, provides that "no person . . . shall . . . charge, take or receive any money . . . as interest on the loan of any money . . . at a rate exceeding [16% per annum]."  §190.40 of the New York Penal Law, the criminal usury statute, provides that "[a] person is guilty of criminal usury in the second degree when . . . he knowingly charges, takes or receives any money . . . as interest on the loan . . . of any money . . . , at a rate exceeding [25% per annum]."

§5-511 of the New York General Obligations Law provides that contracts prescribed in §5-501, the *civil* usury statute, shall be void, "but there is no specific statutory authority for voiding a loan that violates the criminal usury statute" *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 *46 (S.D.N.Y. 2009).  Finally, §5-521 of the New York General Obligations Law provides that a corporation may not assert the defense of civil usury, but that it may assert a defense of criminal usury.  Defendant carefully conflates the two defenses to suit its arguments.  Granted, many Courts have analyzed criminal and civil usury under similar framework, it is nonetheless important to be mindful of which defense Defendant, a corporation, can avail itself of – criminal usury pursuant to N.Y. Pen. L. §190.40 vis-à-vis N.Y. G.O.L. §5-521, and not civil usury pursuant to N.Y. G.O.L. §§5-511 and 5-501.

"Usury is an affirmative defense, and a heaven burden rests upon the party seeking to impeach a transaction based upon usury."  *Union Capital LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445 *10-11 (S.D.N.Y. 2017).  "Defendant [must] establish usury by clear and convincing evidence."  *Sabella v. Scantek Med., Inc.*, 2009 U.S. Dist. 2009 *45 (S.D.N.Y. 2009).  "Criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance."  *Id*.  "For a loan to be criminally usurious under that section, the alleged usurer must 'knowingly' charge interest in excess of the legal rate." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 77 (2d Cir. 1980).  "If usury can be gleaned

3

from the face of an instrument, intent will be implied and usury will be found as a matter of law." *Blue Wolf Capital Fund II v. American Stevedoring, Inc.*, 105 A.D.3d 178, 183 (1st Dep't 2013).  There is a strong presumption against the finding of usurious intent when the loan is not usurious on its face.  See, *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 77 (2d Cir. 1980); *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 (S.D.N.Y. 2009); *LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 Misc. LEXIS 4294 (N.Y. Sup., Kings Co.).  Finally, "[i]ntent is a question of fact.  Similarly, whether a given fee or commission is a cover for usury is a question of fact." *In re General American Communications Corp.*, 73 B.R. 887, 891 (S.D.N.Y. 1987)(internal citations omitted).

"To determine whether a transaction is usurious, courts look not to its form but to its substance or real character." *Blue Wolf Capital Fund II v. American Stevedoring, Inc.*, 105 A.D.3d 178, 183 (1st Dep't 2013).  Courts have analyzed the substance and real character of the precise discount that Defendant argues is "interest," and found that it is not.  On March 31, 2017, the Hon. Richard J. Sullivan of this Court, analyzing a 42% discount on a nearly identical note to those here found that it was not interest.  First, Judge Sullivan stated that "[plaintiff] simply held an option to convert shares, and it could have elected to obtain repayment in cash, which clearly would not have been usurious.  Moreover, even if [plaintiff] chose to convert the loan principal into shares, any potential profit [plaintiff] might realize would . . . be too uncertain to incorporate into an interest rate calculation." *Union Capital, LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445 *12 (S.D.N.Y. 2017).  "Furthermore, even if the discount rate could be considered, a usury defense could no longer be applied against the loan once the Note principal was converted in equity in Defendant." *Id*. at 13.  Similarly, on March 7, 2017, the Hon. J. Paul Oetken found that "though the initial transaction took the form of a loan, upon conversion to

4

equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense." *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 2017 U.S. Dist. LEXIS 32335 *8 (S.D.N.Y. 2017).  New York State Courts have held the same:

> It is further noted that 'usury laws apply only to loans or forbearances, not investments.'  Although the initial transactions were loans, which were clearly not usurious . . . , the Securities Purchase Agreement provided that, upon conversion, [defendant] was selling securities under Note 1 to [plaintiff] as an 'investor.'  The conversion to stock would convert plaintiff from a lender to an investor with the right to share in the profits and losses of [defendant]. . . . Where the transaction provides for the purchase of shares of stock and the price of stock fluctuates so that it is unclear if the interest rate would exceed the legal rate of interest, no usury exists.

*LG Capital Funding, LLC v. Sanomedics Intl. Holdings, Inc.*, 2015 N.Y. Misc. LEXIS 4294 *29-30. (N.Y. Sup. Ct., Kings Co. 2015).

Next, "[u]sury does not apply where the loan imposes an interest rate greater than the statutory maximum only after a default." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 *45-46 (S.D.N.Y. 2009).  While Defendant, relies entirely on language from the recent decision of *Madden v. Midland*, 2017 U.S. Dist. LEXIS 27109 (S.D.N.Y.) to claim the contrary, as will be discussed in further detail below, the ultimate holding in *Madden* related to an individual using the usury cap provided in N.Y. Pen. L. §190.40 as a predicate for claims under the Fair Debt Collections Practices Act, and is inapplicable here.

Next, "[T]here is no specific statutory authority for voiding a loan that violates the criminal usury statute." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 *46 (S.D.N.Y. 2009)(citing *Funding Group, Inc. v. Water Chef, Inc.*, 19 Misc. 3d 483 (N.Y. Sup. 2008)).  "More recent cases . . . have refused to void loans that violate the New York's criminal usury provision but instead contemplate using a non-usurious rate." *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr. LEXIS

4113 *125 (S.D.N.Y. 2016).  "If a party succeeds on its criminal usury defense, the Court would not void the entire agreement or interest rate 'but would rather revise the interest obligation to require a non-usurious rate'" *Star Funding, Inc. v. Vault Minerals, LLC*, 2017 U.S. Dist. LEXIS 128336 *13 (S.D.N.Y. 2017).

Finally, while a "usury avoidance clause does not, by itself, save an agreement from a charge of usury, . . .  it may be relevant on the issue of intent."  *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr. LEXIS 4113 *123 (S.D.N.Y. 2016). Indeed, considerations such as intent, the size of the transaction, the need or deserving of financial protection, the sophistication of the parties, and other equitable considerations were all applied in the *BH Sutton* Court's decision to not void the usurious transaction, but instead revise the interest obligation to a non-usurious rate. *Id*. at 124-127.

Defendant relies on a single case for the proposition that this motion is properly brought under Fed. R. Civ. P. 12(b)(6), *Rothstein v. Isolation Film LLC*, 2017 U.S. Dist. LEXIS 59133 (S.D.N.Y. 2017).  In *Rothstein*, the plaintiff loaned defendant $150,000.00, with $187,500.00 to be paid in six months.   Upon defendant's motion to dismiss, the Court determined that $37,500.00 of interest to be paid on $150,000.00 in six months constituted interest on the face of the loan of 50% per annum.  Because the monetary payment in six months was clearly interest determinable from the face of the note, the Court found the requisite intent to be implied, and dismissed the complaint.  Here, however, the Notes' pre-default interest rate is 8%.  Therefore, intent cannot be implied and there is a strong presumption against finding usurious intent.

Defendant's burden is great, particularly given that "[w]hile evaluating a motion to dismiss, a reviewing [C]ourt must draw all reasonable inferences in the plaintiff's favor."  *Olivia v. Town of Greece*, 630 Fed. Appx. 43, 44 (2d Cir. 2015).  Defendant must show by clear and

convincing evidence that the discounted conversion price and the reserve of shares are disguised interest, despite case law that says otherwise.  Next, although Defendant claims that the Notes are usurious on their faces, it clearly contradicts itself, as it later argues that "LG has 'disguised' interest charges in an attempt to evade usury laws." Dkt. 29, p. 12.  Therefore, Defendant has to rebut the presumption against usurious intent by clear and convincing evidence showing that Plaintiff knowingly charged a usurious rate, despite the interest on the face of the Notes being 8%, two usury avoidance clauses, and case law expressly stating that these items were not interest.

Even then, if Defendant were to meet this overwhelming burden, the Court should still not dismiss the case, as the interest rates on the loan should be adjusted, rather than the loan be voided.

## IV.   ARGUMENT

### A.  The Discounted Price to Acquire Stock is Not Interest.

Defendant's first point of relevance, Point III, contends that "[t]he conversion discount value of 40% reserved to Plaintiff at the time the loans were made is interest to be included in usury analysis and violates usury laws."  Dkt. 29, p. 11.  Defendant then proceeds to cite the civil usury statutes, despite arguing a defense of criminal usury, and attempts to analogize the present facts to numerous off-point, foreign cases in an effort to liken the discounted conversion price to various items that courts have suggested could constitute interest.  Defendant fails to raise two cases from this Court which analyze nearly identical conversion rights.

First, Defendant cites to *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013) for the proposition that "value of stock option is critical in calculating true amount of loan as well as effective interest rate." Dkt. 29, p. 11.  *Hillair* is easily

7

distinguishable, in that the *Hillair* defendant took out two loans which had to be repaid *and* delivered shares of stock, in contrast to here, where defendant would deliver stock *in lieu of* repaying the loan.  In other words, defendant received loans, delivered stock, then also had to repay the loans with interest.   The *Hillair* Court found that defendant "undertook four transactions: they took out two loans, and they also twice sold stock to Plaintiff.  The value of the sold stock therefore is critical to calculating the initial loan amount and thus the interest rate." *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 *340 (S.D.N.Y. 2013).  Here, Defendant was obligated to either repay the loans, or deliver stock, not both.

Next, defendant cites *Sabella v. Scantek Med. Inc.*, 2009 U.S. Dist. 88170 (S.D.N.Y. 2009) for the proposition that "value of common stock given to lender should be taken into account when calculation interest rates." Dkt. 29, p. 11.  Like *Hillair*, in *Sabella*, the shares that the Court was willing to entertain as constituting interest were delivered in addition to repayment of the loan, not in lieu of repayment.

Defendant's reliance on *Peltz v. Welsh, Carson, Anderson & Stow VII, L.P. (In re Bridge Info. Sys.)*, 311 B.R. 781 (Bankr. E.D. Mo. 2004) is vexing.  *In re Bridge Info Sys.*, a Bankruptcy Proceeding in the Missouri Eastern Bankruptcy Court, involved whether a "Call Option" to convert debt into equity constituted a "transfer" under 11 U.S.C. §547, relating to property in an estate.  *In re Bridge Info Sys.* has nothing to do with usury, interest, or New York law.

Next, Defendant cites *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 (S.D.N.Y. 2001) for the proposition that "[i]n N.Y. a loan is usurious when the lender is entitled to the principal balance along with a legal rate of interest plus additional payment contingent on an event that is out of borrower's control."  Dkt. 29, p. 11.  *Phlo* involved the delivery of stock (in the form of warrants) in addition to repayment of the loan, not in lieu of

repayment of the loan.  Regardless, the Court in *Phlo* found that due to the fluctuating nature of stock prices "it was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain," and therefore, the warrants should not be included in a usury determination.  *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 *13 (S.D.N.Y. 2001).   Defendant argues that because "Plaintiff will always receive 40% more on each dollar that it converts into stock under the Note," it "reserved to itself more in actual value at the time the loan was made, insulating itself from all risk, even at the time of conversion."  Dkt. 29, p. 12.  Defendant's definite language is not warranted, as there is a laundry list of circumstances under which Plaintiff could realize no profit from the discount. Using one of Defendant's Events of Default as an example shows that the 40% discount is not "actual value" and that Plaintiff was not "insulated from all risk."   In order for Plaintiff to convert and sell the stock pursuant to the Notes, Securities and Exchange Commission ("SEC") regulations require, with limited exceptions that are inapplicable here, that Defendant is current with its SEC filings.  On April 15, 2016, Defendant became delinquent in said filings, and the conversion right became valueless.  Alternatively, had Defendant remained current, the historical data surrounding Defendant's common stock show that Plaintiff would have been unlikely to find a buyer for Defendant's stock upon the conversion, or the shares would have had no value.[1] Accordingly, like the the warrants in *Phlo*, it "is unclear if and when the loan will be repaid [through sale of stock], and it is far from clear, in light of the numbers and the circumstances, that the effective interest rate would exceed 25% in any event."  *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 *14 (S.D.N.Y. 2001).

---

[1] Indeed, a review of Defendant's stock price data shows that in over 375 trading days since Note 1 matured, there have been over 110 days where there was not a single share of Defendant's was sold despite sellers offering to do so for a price of $.0001.  Further, on less than 20 days did the price of Defendant's common stock increase from $.0001, and on 44 days it reached a value of $0.

Next, Defendant relies on *Custom Chrome, Inc. v. Commissioner*, 217 F.3d 1117 (9th Cir. 2000). Defendant states that *Custom Chrome, Inc.*, a Ninth Circuit review of an appeal from a decision of the Tax Court regarding deficiencies in Custom Chrome's income taxes, "properly stated that warrants are equivalent to options and in valuing them should be treated as original issue discount." Dkt. 29, pp. 11-12. Without adequate knowledge of the California Tax Code, it is difficult to determine the applicability of *Custom Chrome* here, but it seemed to hold that warrants granted in conjunction with an entire loan must be valued at the date of issuance, and cannot be included in a corporation's tax deductions. *Custom Chrome, Inc.*, 217 F.3d at 1128. *Custom Chrome*, however, did not address whether a discount in the right to obtain stock, or anything similar, was interest for the purposes of a usury determination under New York law.

*AWG Leasing Tr. v. United States*, 592 F. Supp. 2d 953 (N.D. Ohio 2008), another tax dispute, this time in the Northern District of Ohio, is cited for the proposition that "the original issue discount is the difference between the redemption price at maturity and issue price and therefore a type of interest." Dkt. 29, p. 12. In *AWG*, two national banks disputed adjustments that the Internal Revenue Service made to federal income tax returns for five years. The Northern District of Ohio made no mention of usury, interest, New York Law, intent, or Fed. R. Civ. P. 12(b)(6), but did state that a difference between the amount actually received by a debtor and the face value of an instrument is interest, and must general be included in a taxpayer's reported income as it accrues over the duration of the instrument.

Finally, Defendant cites to *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 2013 N.Y. Slip Op. 1483 (1st Dep't, 2013). The *Blue Wolf* transaction involved a loan agreement with a principal amount of $1,130,000.00 and a stated interest rate of 12% per annum. The loan agreement also charged the debtor with a $50,000.00 "commitment fee," a $75,000.00 deposit

against creditor's costs and expenses, and a $200,000.00 "deposit against future commitment fees."  As a result, debtor received only $805,000.00 of the $1,130,000.00 principal of the loan. Three months later, Defendant demanded repayment of $1,056,569.00, then two months after that, demanded repayment of $1,172,513.00.  The court found that "the $200,000.00 deposit 'against future commitment fees' constitute[d] additional interest within the meaning of the statute" because Blue Wolf could retain the deposit "in its sole discretion." *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 2013 N.Y. Slip Op. 1483 *183 (1st Dep't, 2013).  Because "usury [could] be gleaned from the face of the [loan], intent [was] implied and usury [was] found as a matter of law."  *Id*.  The Court did not determine the "true character" of the other $125,000.00 withheld, as the $200,000.00 cash deposit withholding on its own made the loan usurious.  Finally, and mistakenly, the Court states that "[s]ince ASI has successfully asserted criminal usury as an affirmative defense, the loan transaction and the associated note, loan agreement, and collateral agreement are void and unenforceable," citing N.Y. G.O.L. §5-511. However, ASI was a corporation asserting the defense of criminal usury, and §5-511 provides that loans which violate §5-501, the civil usury statute, are void.  Defendant does not argue that amounts of money withheld here make the loan usurious.  It argues that a discount to a conversion right related to a fluctuating stock price, which may or may not be executed throughout the life of the contract, is akin to withholding cash.  The two are not the same, and this Court has already come to that conclusion, as will be discussed below.  Therefore, Defendant's reliance on *Blue Wolf* is improper.

Defendant's logical leap from the aforementioned cases to the facts before the Court is long and unjustifiable.  Defendant states that "Plaintiff has reserved to itself a 40% discount as to the market price of defendant's public stock . . . until all amounts under the loans are repaid by

way of a cash payment, or the conversion of debt into stock." Dkt. 29, p. 12.  Next, despite having acknowledged that Plaintiff is not entitled to both the stock and repayment in the prior sentence, Defendant states that "[t]he 40% discount is reserved interest that has a separate value that is legally required to be included in the usury analysis."  *Id*.  Defendant attempts to liken the discount to the money withheld from the face of the loan in *Blue Wolf*, to stock warrants which the court in *Phlo* determined were not part of interest, to the tax treatment of stock warrants in *AWG Leasing*, and the tax repercussions of original issue discounts in *Custom Chrome*.  None of these cases stand for the proposition that a discounted conversion right, or anything similar thereto, should be considered interest for the purposes of a usury determination.

Suspiciously absent from Defendant's motion are three cases that analyzed nearly identical conversion rights to those at issue here, and held that they are not to be included in a usury determination.  The provision at issue herein states "[t]he Holder of this Note is entitled, at any time, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock . . . at a price . . . for each share equal to 60% of the **lowest trading price** of the Common Stock . . .  for the fifteen prior trading days . . . ."  Dkt. 27-1, §4(a); Dkt. 27-2, §4(a).

Beginning with *Union Capital LLC v. Vape Holdings, Inc.*, 16-cv-1343 (RJS), 2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017), the Hon. Richard J. Sullivan analyzed Vape's usury defense in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The note at issue in *Union* (the "Union Note") is nearly identical to the Notes herein.  The Union Note and the Notes all provide for a principal amount due one year from issuance, 8% interest thereupon, 24% interest in the event of default, and a conversion right.  The Union Note stated that "[t]he Holder of this Note is entitled, at any time, to convert all or any amount of the principal face

amount of this Note then outstanding into shares of the Company's common stock . . . at a price . . . for each share equal to 58% of the **lowest trading price** of the Common Stock . . .  for the thirteen prior trading days . . . ." *Union Capital LLC*, 16-cv-1343 (RJS), Dkt. 1-1.  Therefore, the only difference between the notes are a 2% difference in the discount and a two-day difference in the look-back provision.  With regard to this provision, Judge Sullivan stated:

> Vape argues that, in considering the effective interest rate, the Court should also include the potential profit Union might reap by converting shares at a 42% discount.  The Court disagrees.  Union simply held an option to convert shares, and it could have elected to obtain repayment in cash, which would clearly not have been usurious.  Moreover, even if Union chose to convert the loan principal into shares, any potential profit Union might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation. Furthermore, even if the discount rate could be considered, a usury defense could no longer be applied against the loan once the Note principal was converted into equity in Vape. Accordingly, Vape cannot meet its heavy burden in impeaching the transaction for usury.  *Union Capital LLC v. Vape Holdings, Inc.*, 16-cv-1343 (RJS), 2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017) (internal citations omitted).

Having cited *Union* to support the proposition that the Notes started off as a loan, Dkt. 29, p. 8, Defendant was undoubtedly aware of this determination, yet it failed to bring this highly poignant analysis before the Court, choosing instead to make its case on tenuous analogies to off-point tax disputes from other Districts and Circuits.

Similar analysis was applied by this Court in *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 16-cv-5176(JPO), 2017 U.S. Dist. LEXIS 32335 (S.D.N.Y. 2017).  The notes at issue in *Beaufort* provided that "'at any time after the Maturity Date . . . this Note, including interest and principal, shall be convertible into shares at the higher of (a) $.0004; or (b) the amount that is a 30% discount' from the average closing price." *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 16-cv-5176(JPO), 2017 U.S. Dist. LEXIS 32335 *6 (S.D.N.Y. 2017).  Like Defendant, "Oxysure argue(d) . . . that a 30% discount in the equity conversion effectively increases the interest rate

on the notes to a level that is usurious."  *Id*. at 6-7.  The Hon. J. Paul Oetken first found that because the conversion right only applied after an event of default, the usury defense could not apply.  Further, Judge Oetken continued:

> Even focusing on the post-maturity interest rate . . . , the usury defense would likely nonetheless fail because it relies on the debt-to-equity conversion feature of the notes.  The conversion feature allowed Beaufort to redeem the Notes for equity at a discounted price after the maturity date.  However, though the initial transaction took the form of a loan, upon conversion to equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense.  Thus Oxysure's reliance on the discounted equity conversion in calculating the applicable interest rate for its usury defense is misplaced. *Id*

Again, Defendant's analogies and leaps in logic are unnecessary, and the Court should apply the same analysis as it did in *Beaufort* and *Union*.

The New York State Court has made the same determination.  In *LG Capital Funding, LLC v. Sanomedics Int'l. Holdings, Inc.*, 2015 N.Y. Misc. 4294 (Sup. Ct. 2015).  Plaintiff herein[2] brought an action against a corporation based upon similar convertible notes.  The *Sanomedics* notes provided for a conversion price equal to 55% of the average of the lowest three trading prices for the ten prior trading days.  Again, only the percentage and the "look-back" are different from the Notes' conversion provision.  Defendant argued that the notes were usurious and unenforceable based on this conversion provision.  The court first found that the notes were not usurious on their faces because they provided for 8% and 10% per annum interest rates.  *Id*. at 29.  Next, the court stated:

> It is further noted that 'usury laws apply only to loans or forbearances, not investments.  Although the initial transactions were loans, which were clearly note usurious, as plaintiff notes, the Securities Purchases Agreement provided that, upon conversion, [Defendant] was selling securities . . . to it as an 'investor.'  The conversion to stock would convert plaintiff from a lender to an investor with the right to share in the profits and losses of [Defendant] . . . . While a loan may

---

[2] Plaintiff's involvement in the *Sanomedics* action is highly indicative that the intent requirement for proving usury cannot be met, particularly when all inferences are to be drawn in Plaintiff's favor.  Intent will be further discussed in Section IV(D) herein.

not be disguised as an investment as a cover for usury . . . upon conversion at Plaintiff's election [Defendant's] debt to plaintiff [would] become an investment, upon which plaintiff took the risk that the stock could become completely worthless.  Where the transaction provides for the purchase of shares of stock and the price of stock fluctuates so that it is unclear if the interest rate would exceed the legal rate of interest, no usury exits.  *Id.* at 29-30.

Therefore, Defendant's dive into the annals of tax law of foreign Districts to formulate analogies was unnecessary, and should be disregarded, as there is sufficient persuasive authority in relevant jurisdictions for the Court to draw upon to reach the conclusion that Defendant's argument is meritless.

### B.  The Share Reserve is Not Interest.

Defendant's next argument is a more-tenuous iteration of its prior argument.  Defendant attempts to characterize a share reserve, meant to effectuate conversions discussed in the section above, as charged interest for the purposes of a usury determination.  This argument fails for numerous reasons.  First, the share reserve is not charged to Defendant under any definition of the word.  Second, the shares are placed in the control of Defendant's own agent, so it remains in possession of them.  Third, the shares would only be delivered to Plaintiff if it exercises its conversion right, placing the circumstances back into the debt versus equity framework applied by this Court for the conversion right itself.  Fourth, if the Notes are not converted or shares remain after the Notes are fully converted, the reserve is cancelled and the shares are returned to Defendant.  Fifth, Defendant's argument is premised on the §5-511, a statute applicable to the defense of civil usury.  Sixth, and finally, it relies on two cases which do not support the propositions that Defendant claims they do.

Section 12 of each Note states:

The Company shall issue irrevocable transfer agent instructions reserving [a [designated amount of] shares of its Common Stock for conversions under this Note (the "Share Reserve").  Upon full conversion of this Note, any shares

remaining in the Share Reserve shall be cancelled. . . The company should at all times reserve a minimum of four times the amount of shares required if the note would be fully converted. Dkt. 27-1, §12; Dkt. 27-2, §12.

Several facts are clear from this provision.  The reserve is established with Defendant's own transfer agent; thus, the shares remain in Defendant's possession.  While Defendant will likely claim that the instructions are irrevocable, if Defendant were to terminate or change its agent, the reserve would be cancelled, making the instructions only irrevocable insofar as that specific agent remains the agent of Defendant.  Further, if Plaintiff does not execute conversions, or if shares remain in reserve after the balance of the Notes is converted, the reserve is cancelled, and the shares are returned to Defendant.   Therefore, until a conversion is executed, the shares remain in Defendant's possession and cannot be considered charged to Defendant such that they should be included an interest determination.

The only point at which the shares in reserve would be delivered to Plaintiff is upon conversion.  As Defendant admits, the reserve is established in order "to effectuate future repayment conversions of the loans into equity." Dkt. 29, p. 13.  Accordingly, the same logic applied in *Union*, *Beaufort*, and *Sanomedics* applies.  Upon conversion, the transaction between the parties changes from a loan to an investment, and usury is inapplicable.

The inapplicability of usury here is further emphasized by the Court's decision in *Phlo*, which held that due to the fluctuating nature of stock prices "it was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain." *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 *13 (S.D.N.Y. 2001).  From March 5, 2015, when the reserve was first established, to date, the price of WSTI stock has ranged from $0.0000 per share to $.412 per share.  Adding these fluctuations to the uncertainty of when, if at all, Plaintiff would convert portions of the Notes, like the

16

warrants in *Phlo*, it is far from certain that Plaintiff could ever receive the effective interest rate in excess of 25%, as the value of the shares delivered pursuant to the reserve, if delivered at all, fluctuates greatly. *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 *13 (S.D.N.Y. 2001). Indeed, to the extent that any inferences must be made as to whether such interest would be paid, in considering this Fed. R. Civ. P. 12(b)(6) motion, they should be drawn in favor of Plaintiff, making Defendant's argument wholly without merit.

Last, the authority cited by Defendant in support of this argument is inapplicable. Defendant relies on N.Y. G.O.L §5-511 to support its argument that a "reserve" of anything can be considered interest. As indicated throughout this Opposition, Defendant conflates the civil usury statutes and the criminal usury statutes. §5-511 is applicable to §5-501, not § 190.40 of the New York Penal Law. To interpret §5-511 differently would render the section's reference to §5-501 superfluous. Therefore, Defendant's reliance on the section is inappropriate.

The cases cited by Defendant are equally inapplicable. As discussed above, *Blue Wolf* involved a creditor who withheld over $300,000.00 in case on a $1,150,000.00 loan, yet demanded nearly the full amount of the loan in 3 months. There is no mention of reserving items for future performance. Likewise, *Funding Grp., Inc. v. Water Chef, Inc.*, 19 Misc. 483 (N.Y. Sup. Ct. 2008), involved a $25,000.00 loan to be paid in 45-days, with an interest rate of 10% per month (or 120% per year), as well as an incentive fee in the form of delivery of stock with a value of $7,500.00 (243% of the loan), bringing the interest rate on the face of the loan to 363%. The court did not address a reserve of shares related to future performance in lieu of repayment. Thus, the both cases are inapplicable.

Given the lack of support of Defendant's argument, the inferences to be drawn in Plaintiff's favor, and the contrary persuasive case law of this Court, Defendant's argument that the share reserve should constitute interest for the purposes of a usury determination fails.

**C.   The Post-Default Interest Rate is Irrelevant to the Usury Determination.**

Defendant's next argument seeks to overturn decades of case law which states that usury limits do not apply when rates charged only after default exceed usury limits based on an off-point holding in a recent decision by the Hon. Cathy Seibel of the Southern District Court of New York in White Plains.  Defendant misstates the holding, and thus the law.  Therefore, interest charged in excess of 25% only after default does not render a transaction usurious.

*Madden v. Midland Funding, LLC*, 11-cv-8149 (CS), 2017 U.S. Dist. 27109 (S.D.N.Y. 2017), unlike the present matter, is an archetypal scenario that usury laws were intended to prevent.  Plaintiff, an individual, was charged a variable periodic interest rate amounting to 32.24% by a credit card company.  Ms. Madden filed a complaint in which she attempted to assert a private cause of action voiding her debts based on New York's criminal and civil usury statutes.   *Madden v. Midland Funding, LLC*, 2017 U.S. Dist. 27109 * 4 (S.D.N.Y. 2017).  Judge Seibel ultimately granted the creditor's motion for summary judgment as to Plaintiff's usury claims because "criminal usury law does not provide a private right of action."  *Id.*, at 24.

Interestingly, despite deciding to grant summary judgment to the creditor on different grounds, Judge Seibel, after going to great lengths to distinguish dozens of New York State Court decisions that "suggest that the criminal usury cap does not apply to defaulted obligations," stated "I believe that the New York Court of Appeals, were it to face this situation, would hold that the criminal usury cap limits interest charged on debts to 25% annually, even for defaulted debts."  *Id.*, at 17.

Judge Seibel's survey of Federal decisions is similar.  Judge Seibel acknowledges numerous cases that state "it is well established that the usury statutes do not apply to defaulted obligations," but distinguishes them, stating "[m]any of the cases that seem to suggest that the criminal usury cap does not apply to defaulted obligations in fact addressed default rates that were below 25%, and so would not have violated the criminal usury cap even if it applied."  *Id.*, at 18.  However, this logic is flawed when compared to the Court's consistent reference to both usury statutes as inapplicable to defaulted obligations.  For example, *Llewellin v. Asset Acceptance, LLC*, 2015 U.S. Dist. LEXIS 145437 (S.D.N.Y. 2015), states "New York's usury laws do not apply to 'defaulted obligations.'"  Likewise, *Prowley v. Hemar Ins. Corp. of Am.*, 2010 U.S. Dist. LEXIS 45249 (S.D.N.Y. 2010) states "New York usury laws do not apply to default obligations."  Finally, *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556 (S.D.N.Y. 2003) states "it is well established that the usury statutes do not apply to defaulted obligations."  Notably, in each of these cases, this Court chose to refer to usury laws and statutes as plural, not distinguishing between civil and criminal usury.  Thus, contrary to Judge Seibel's determination, it is improper to infer that the Court's consistent reference to "usury laws" and "usury statutes" was a persistent error.  Nonetheless, Judge Seibel concluded the survey stating, "[i]n sum, although the issue may ultimately have to be settled by the New York Court of Appeals, I conclude that New York's criminal usury cap applies to prevent a creditor from collecting interest above 25% on a defaulted debt."  *Madden.*, 2017 U.S. Dist. 27109 at 20.

Even if Judge Seibel's finding was not contrary to a long-line of case law, it should be viewed in the context of why Her Honor reached that decision.  Judge Seibel granted defendant summary judgment on plaintiff's claims arising out of the usury laws, but reached her conclusion in the context that usury "is available as a predicate for Plaintiff's Fair Debt Collection Practices

Act claims." *Id.*, at 23.  While those claims have yet to be resolved, the FDCPA claims could only be asserted by a natural person.  Therefore, it is questionable if this decision would have any bearing on this matter whatsoever, as Defendant is a corporation, not permitted to avail itself to the FDCPA.

To summarize, Judge Seibel determined that: (i) the civil usury cap does not apply to defaulted obligations; (ii) the criminal usury cap may apply to defaulted obligations, but the matter may ultimately need to be decided by the New York Court of Appeals; (iii) that the usury statutes do not provide for a private right of action; and, (iv) that interest charged to an individual in excess of the criminal usury cap is available as a predicate for FDCPA claims sufficient to survive summary judgment.   Therefore, *Madden*'s holding does not apply to this matter, and charges following a Default are not included in a usury determination.

**D.  Defendant Cannot Prove the Intent Necessary for a Finding of Usury.**

Even if the Court were inclined to accept Defendant's tenuous analogies in favor of this Court's prior findings, and even if the Court were to adopt Judge Seibel's rationale, Defendant would still be unable to prove the necessary intent, particularly in the context of a motion pursuant to Fed. R. Civ. P. 12(b)(6).

"When a note is not usurious on its face, a court will not presume usury rather, the party asserting the defense must prove all the elements.  An essential element of the affirmative defense of usury is the lender's usurious intent.  Such intent remains a question of fact and will not be presumed where a note states a legal rate of interest." *Union Capital LLC v. Vape Holdings Inc.*, U.S. Dist. LEXIS 60445, at *10 (S.D.N.Y. 2017)(internal quotation omitted). Analyzing a nearly identical note to those here, Judge Sullivan found that the note was not usurious on its face. *Id*. ("On its face, the Note bears an interest rate of 8%").  Indeed, Defendant

here admits that its claims of usury relate to purported disguised interest, not interest on the face of the Notes.  Dkt. 27, p. 12 ("Defendant contends that LG has 'disguised' interest charges in an attempt to evade the usury laws").  Therefore, Defendant must prove Plaintiff issued the Notes with a usurious intent.  Defendant cannot meet this burden.

First, Plaintiff was expressly informed by a New York State Court that the very provision that Defendant claims to be usurious was **not** usurious.  To find that by including this provision, Plaintiff intended to make usurious transactions would be contrary to due process.  Second, Plaintiff included two provisions in the Notes that indicate that it did not intend for the transactions to be usurious.  Section 8(n) of each Note states "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, that at the highest rate of interest permitted by law." Dkt. 27-1, §8; Dkt. 27-2, §8.  Section 9 states "[i]n case any provision of this Note is held . . . to be . . . unenforceable, such provision shall be adjusted rather than voided . . ." Dkt. 27-1, §9; Dkt. 27-2, §9.  While a "usury avoidance clause does not, by itself, save an agreement from a charge of usury, . . . it may be relevant on the issue of intent."  *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr. LEXIS 4113 *123 (S.D.N.Y. 2016).  Clearly, by setting the default interest rate below the 25% threshold, including two clauses in case the Notes were found to be in excess of the legal maximum, and having an opinion from a New York Court finding that the other provisions were not usurious, Plaintiff did not intend for these transactions to charge a usurious amount of interest.

### E.  Even if the Court were to Find Provisions of the Notes Usurious, the Loans Would Be Adjusted, Rather than Voided.

Given the recent trend in case law, the sophistication of the parties, the lack of intent on behalf of Plaintiff, and the balance of the equities, if the Court were to determine that the Notes

charge disguised interest in excess of 25%, the Court should adjust the interest to a permissible rate, rather than void the Notes in their entireties.

Several cases state that the remedy in the event of a usurious agreement is to revise the interest rate, rather than give the borrower a complete windfall by voiding the loan entirely. *See e.g., Star Funding, Inc. v. Vault Minerals, LLC*, 2017 U.S. Dist. LEXIS 128336 *13 (S.D.N.Y. 2017)*("If a party succeeds on its criminal usury defense, the Court would not void the entire agreement or interest rate 'but would rather revise the interest obligation to require a non-usurious rate'"). "There is no specific statutory authority for voiding a loan that violates the criminal usury statute." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 *46 (S.D.N.Y. 2009). *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr. LEXIS 4113 *125 (S.D.N.Y. 2016), the Court reviewed numerous cases that supported applying a revised interest rate, rather than voiding the transaction. *See Prof. Merch. Advance Capital, LLC v. C Care Servs., LLC*, U.S. Dist. LEXIS 92035, at *14 n.4 (S.D.N.Y. 2015)("If the Court were to find that the Agreement contravened New York's criminal usury law, the Court would nevertheless not void the Agreement *ab initio*, but would rather revise the interest obligation to require a non-usurious rate."); *Koenig v. Slazer Enters.*, 27 Misc. 3d 1212(A) (Sup. Ct. N.Y. 2010)("[T]here is nothing in the General Obligations Law or Penal Law that requires that the Court deem these transactions void"); *Funding Grp., Inc. v. Water Chef, Inc.*, 19 Misc. 3d 483, 852 (Sup. Ct. N.Y. 2008) ("There is no specific statutory authority for voiding a loan that violates the criminal usury statute."). Ultimately, the Court did not void the loan, holding that "the appropriate remedy is to revise the interest obligation on the [loan] to an appropriate non-usurious rate." *BH Sutton Mezz LLC v.*

*Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr. LEXIS 4113 *126 (S.D.N.Y. 2016).

The *BH Sutton* Court considered factors such as the sophistication of the parties, the size of the transaction, and Defendant's need for financial protection before deciding that the interest rate would be adjusted, rather than the loan voided.  Here, these factors clearly favor adjustment. Defendant is a publicly traded corporation, with a CEO having over 20-years experience. Further, in Defendant's last publicly filed financial statement, Defendant reported over $2.1 million of "Convertible notes payable," including the Notes herein.  Defendant cannot pretend that it was duped or strong-armed into these transactions.  Balancing of the equities, as well as the public interest, also favors adjusting the interest rate.  To void these transactions would grant Defendant a total windfall not only with regard to the funds accepted from Plaintiff, but also whatever balance remains on the $2 million outstanding convertible notes.  When also taking into account Plaintiff's reliance on the holdings of this Court and New York State Courts related to the conversion provisions and Plaintiff's clear lack of usurious intent, it is clear that dismissal is not warranted, and "the appropriate remedy is to revise the interest obligation on the [loan] to an appropriate non-usurious rate," even if the Court ultimately decides the Notes provided for usurious interest rates.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

Dated: September 1, 2017
        New York, New York

RESPECTFULLY SUBMITTED,
**GARSON, SEGAL,**
**STEINMETZ, FLADGATE LLP**
*ATTORNEYS FOR PLAINTIFF*


BY:  _____/S/_____

KEVIN KEHRLI
MICHAEL STEINMETZ
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
**TELEPHONE:** (212) 380-3623
**FACSIMILE:** (347) 537-4540
**EMAIL:** KK@GS2LAW.COM

24