USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/29/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
LG CAPITAL FUNDING, LLC,

                        Plaintiff,

                                               17 Civ. 4394 (DAB)
                                               <u>**MEMORANDUM & ORDER**</u>

    v.

WINDSTREAM TECHNOLOGIES, INC.,

                        Defendant.
------------------------------------------------X
**DEBORAH A. BATTS, United States District Judge.**

    On August 25, 2016, Plaintiff LG Capital Funding, LLC filed a Complaint in the Eastern District of New York against Defendant Windstream Technologies, Inc. The case was transferred to this District on June 7, 2017 upon consent of the parties. (ECF No. 18.) Defendant answered the Complaint on June 20, 2017. (ECF No. 21.) The Court then held a Rule 16 conference and set a schedule for Plaintiff to file an Amended Complaint and for Defendant to file a Rule 12(b)(6) Motion to Dismiss. (ECF No. 23.) Plaintiff amended its Complaint on July 20, 2017, asserting causes of action for breach of two securities purchase agreements and two notes (Count 1), unjust enrichment (Count 2), and for costs, expenses, and attorneys' fees pursuant to the contracts (Count 3). (ECF No. 24.) Defendant filed the instant Motion on August 16, 2017, asserting that the Note is usurious

and thus void under New York law. For the following reasons, the Court DENIES the Motion.[1]

I. BACKGROUND

On March 5, 2015, the parties entered into two agreements: a Securities Purchase Agreement (Am. Compl. Ex. 1 ("SPA 1")) and a $105,000.00 convertible redeemable note (Am. Compl. Ex. 2 ("Note 1")). (Am. Compl. ¶¶ 7-8.) On August 11, 2015, the parties entered into a second Securities Purchase Agreement (Am. Compl. Ex. 3 ("SPA 2")) and a second $105,000.00 convertible redeemable note (Am. Compl. Ex. 4 ("Note 2")). (Am. Compl. ¶¶ 9-10.)[2] The two SPAs are largely the same, as are the two Notes. (Id. ¶ 11.) The Notes both provide for an 8% annual interest rate. (Notes at 1; see also SPAs, Preamble § B.) Note 1 has a maturity date of March 5, 2016 (Note 1 at 1), and Note 2 has a maturity date of August 11, 2016. (Note 2 at 1.)

The Agreements give Plaintiff the option of converting debt pursuant to the Note to shares of Defendant's stock. The Notes provide Plaintiff with the right to convert all or part of the

---

[1] The parties in this case have filed a number of similar cases in this District. Notably, this Court has four cases where defense counsel, Mark Basile, has asserted a usury defense. This Memorandum & Order is substantially the same as that issued in Case No. 17 Civ. 3118 today.

[2] The Court uses the "Notes" to refer to Note 1 and Note 2 together, the "SPAs" to refer to SPA 1 and SPA 2 together, and the "Agreements" to refer to all four collectively.

outstanding principal into shares of Defendant's stock at a discount market price. (Notes § 4(a).) If Plaintiff were to opt to convert any of the principal into stock, the price per share would be equal to 60% of the lowest trading price of the stock for the fifteen trading days prior to when the notice of conversion is sent (including the date the notice is sent). (Id.) The SPAs state that Plaintiff "is purchasing the Note and the shares of Common Stock issuable upon conversion of or otherwise pursuant to the Note." (SPAs § 2(a).) To effectuate a conversion, the Notes require Plaintiff to submit a notice of conversion to Defendant. (Notes § 4(a).)

Coupled with the stock conversion provisions are ones related to the reservation of stock to ensure availability of shares for the purposes of conversion. (Am. Compl. ¶ 19; see also SPAs § 3(c).) Note 1 provides that Defendant will issue 1,830,000 shares of its stock to a transfer agent for conversion (Note 1 § 12), and Note 2 provides that Defendant would reserve 70,000,000 shares for stock conversion. (Note 2 § 12.) They further state that Defendant "should at all times reserve a minimum of four times the amount of shares required if the [N]ote would be fully converted" and that Plaintiff "may reasonably request increases from time to time to reserve such amounts." (Notes § 12.)

The Agreements set forth various circumstances that constitute default. The Notes provide that Defendant's failure to pay interest or principal constitutes a default. (Notes § 8(a).) They also indicate that Defendant's failure to be current in its filing with the Securities and Exchange Commission constitutes default. (Id. § 8(m).)

The Notes provide for various penalties in the event of default. They set a default interest rate of 24% annually "or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Id. § 8.) In the case of a default based on failure to deliver stock, Defendant is required to pay daily liquidated damages of $250.00 per day the stock is not issued (beginning on the fourth day after receipt of the conversion notice), escalating to $500.00 per day on the tenth day. (Id.) The Notes further state, "If this Note is not paid at maturity, the outstanding principal due under this Note shall increase by 10%." (Id.) They also provide that Defendant "agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by [Plaintiff] in collecting any amount due under this Note." (Id. § 7.)

From October 2015 to December 2015, Plaintiff issued three conversion notices to Defendant pursuant to Note 1, seeking to convert portions of the principal balance and interest of the

4

Note to stock. (Am. Compl. ¶ 22; Am. Compl. Ex. 5.) After the conversions totaling $13,187.12 (consisting of principal and interest) were made, the outstanding principal on Note 1 was $92,500.00. (Am. Compl. ¶ 22-23 & n.2.)

Plaintiff alleges that, on March 30, 2016, Defendant notified the SEC that it would be filing its 2015 annual report late, but it still had not filed the report at the time the Amended Complaint was filed. (Am. Compl. ¶ 31.) Defendant also failed to file a quarterly report for the period ending March 31, 2016. (Id. ¶ 32.) Plaintiff sent a letter to Defendant on August 2, 2016 saying that Defendant had breached the Notes and demanding payment. (Id. ¶ 34; Am. Compl. Ex. 6.)

Plaintiff alleges that Defendant owes $233,446.71 as of the date of filing, consisting of $209,727.40 in principal, $12,2227.40 in interest accrued prior to the date of default, and $23,719.31 in default interest accrued from the date of default to the date of filing. (Am. Compl. ¶ 35.)

II. DISCUSSION

Defendant seeks to dismiss Plaintiff's Complaint on the ground that the Notes are criminally usurious as a matter of law.³ It offers several reasons why the Notes are usurious: (1)

---

³ Defendant asserts in passing that Plaintiff has not adequately alleged diversity of citizenship. (Def.'s Mem. Law Supp. Mot. Dismiss at 2-3.) However, Plaintiff has alleged in the Amended

5

the conversion discount; (2) the reservation of shares; and (3) the default interest rate. Defendant argues that criminally usurious notes are void under New York General Obligations Law § 5-511.

A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

---

Complaint that it is a New York limited liability company composed entirely of New York citizens, while Defendant is a Wyoming corporation with a principal place of business in Indiana. (Am. Compl. ¶¶ 1-2.) This is sufficient to establish diversity jurisdiction. See Mills 2011 LLC v. Synovus Bank, 921 F. Supp. 2d 219, 220–21 (S.D.N.Y. 2013); Receiveables Exch., LLC v. Hotton, No. 11-CV-0292 JS WDW, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011). Furthermore, both Agreements contain a New York choice of law and forum selection clause (Am. Compl. ¶ 37; SPAs § 5(a); Notes § 14), and this case was transferred from the Eastern District upon consent of the parties. (ECF No. 18.)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, which, like the complaint's "labels and

7

conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

B. New York Usury Law

Under New York Penal Law § 190.40, a loan is criminally usurious when the lender "charges . . . as interest on the loan . . . a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." Hillair Capital Invs., L.P. v. Integrated Freight Corp., 963 F.Supp.2d 336, 339 (S.D.N.Y. 2013) (citing Gandy Mach., Inc., v. Pogue, 483 N.Y.S.2d 744, 745 (N.Y. App. Div. 3d Dep't 1984)); see also Zhavoronkin v. Koutmine, 52 A.D.3d 597, 562 (N.Y. App. Div. 2d Dep't 2008) ("There is a strong presumption against a finding of usury, and . . . the defendant [must] establish usury by clear and convincing evidence."). A party asserting a usury defense must prove that the lender "(1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or

forbearance. The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute." Hufnagel v. George, 135 F. Supp. 2d 406, 407 (S.D.N.Y. 2001) (emphasis in original) (quoting In re Venture Mortg. Fund, L.P., 245 B.R. 460, 473–74 (Bankr. S.D.N.Y. 2000), aff'd, 282 F.3d 185 (2d Cir. 2002)); see also 72 N.Y. Jur. 2d Interest and Usury § 55 (setting forth elements of usury claim).

Because Defendant is a corporation, the civil usury defense is unavailable to it. N.Y. G.O.L. § 5-521; Scantek Med., Inc. v. Sabella, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008). While civilly usurious contracts are void as a matter of law pursuant to General Obligations Law § 5-511, whether criminally usurious loans are void is an open question under New York law. Adar Bays, LLC v. Aim Expl., Inc., 285 F. Supp. 3d 698, 704 (S.D.N.Y. 2018) (citing In re Venture Mortg. Fund, L.P., 282 F.3d 185, 189 (2d Cir. 2002)).

### C. Application

#### 1. Conversion Discount

Defendant argues that the 40% conversion discount renders the Notes usurious because Plaintiff would always receive 40% more on each dollar that it converted into stock under the

Notes. Thus, according to Defendant, the Court must include the 40% discount rate in its interest computations.

Defendant's argument fails the Motion to Dismiss stage. Judge Marrero considered a nearly identical conversion discount provision in Adar Bays, LLC v. Aim Exploration, Inc., 285 F. Supp. 3d 698, 700 (S.D.N.Y. 2018), as did Judge Sullivan in Union Capital LLC v. Vape Holdings Inc., No. 16 CIV. 1343 (RJS), 2017 WL 1406278, at *1 (S.D.N.Y. Mar. 31, 2017).

Both judges noted that the plaintiff could have chosen to be repaid in cash and that that would not have been usurious. Adar Bays, 285 F. Supp. 3d at 702; Union Capital, 2017 WL 1406278, at *5. Further, they reasoned that there were a number of circumstances under which the lender would realize no profit from the stock conversion as stock is not necessarily fully liquid. Adar Bays, 285 F. Supp. 3d at 702; see also Union Capital, 2017 WL 1406278, at *5 ("[A]ny potential profit Union might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation."). For example, the stock price might plummet following submission of a conversion notice. Adar Bays, 285 F. Supp. 3d at 702. All of this is speculative, but both cases point to the underlying issue: this involves questions of fact that are inappropriate to resolve at the Motion to Dismiss stage.

Furthermore, the usury defense with respect to the conversion discount "would likely . . . fail because it relies on the debt-to-equity conversion feature of the notes." Beaufort Capital Partners LLC v. Oxysure Sys., Inc., No. 16-CV-5176 (JPO), 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017). While "the initial transaction took the form of a loan, upon conversion to equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense." Id. (citing Seidel v. 18 E. 17th St. Owners, Inc., 79 N.Y.2d 735, 744 (N.Y. 1992) ("If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'")); see also Adar Bays, 285 F. Supp. 3d at 703; Union Capital, 2017 WL 1406278, at *5; LG Capital Funding, LLC v. 5Barz Int'l, Inc., No. 16-CV-2752(KAM)(JO), 2018 WL 1582077, at *11 (E.D.N.Y. Mar. 31, 2018).

Accordingly, the Court denies Defendant's Motion to Dismiss with respect to its argument that the conversion discount renders the Notes usurious.

### 2. Reservation of Shares

Defendant next argues that the Notes are criminally usurious because they require Defendant to reserve shares as security for the loans to set aside for the conversion option. Note 1 provides that Defendant would issue 1,830,000 shares of

its stock to a transfer agent for conversion (Note 1 § 12), and Note 2 provides that Defendant would reserve 70,000,000 shares for stock conversion. (Note 2 § 12.) They further state that Defendant "should at all times reserve a minimum of four times the amount of shares required if the [N]ote would be fully converted" and that Plaintiff "may reasonably request increases from time to time to reserve such amounts. (Notes § 12.)

In support of its argument, Defendant cites New York General Obligations Law § 5-511, which states that "[a]ll . . . notes . . . whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void." Section 5-501 is New York's civil usury statute, which prohibits a lender from collecting on a loan with interest payment exceeding 16% per annum. N.Y. Gen. Oblig. Law § 5-501; Sabella, 2009 WL 3233703, at *16.

This argument fails though because, on its face, § 5-511 applies to civil, not criminal usury. Corporations, including Defendant in this action, cannot assert a civil usury defense. See supra p. 9; Adar Bays, 285 F. Supp. 3d at 704 (citing Sabella, 2009 WL 3233703, at *16). Defendant's Motion to Dismiss is thus denied on this basis.

### 3. Default Interest Rate

Defendant next argues that the default provisions cause the Notes to violate the criminal usury laws. The Notes provide for a default interest rate of 24% annually "or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Notes § 8.) Defendant primarily focuses on the liquidated damages provisions, but Plaintiff has not sued to enforce those provisions. Accordingly, the Court does not address them.

As a preliminary matter, the Court notes that it is unsettled under New York law whether usury statutes apply to defaulted debts. Adar Bays, 285 F. Supp. 3d at 704. However, the Court need not resolve this question because Defendant's arguments fail for separate reasons. See id. On its face, a 24% interest rate is not criminally usurious. The Court thus rejects Defendant's argument that the default provisions render the Notes usurious. Defendant's Motion is thus also denied on this basis. Because the Court has determined that the Notes are not criminally usurious as a matter of law, it need not determine whether criminally usurious notes are void ab initio. See Adar Bays, 285 F. Supp. 3d at 705-06.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED. Defendant shall answer the Amended Complaint within 21 days of the date of this Memorandum & Order. There shall be no extensions.

SO ORDERED.

DATED: New York, NY
August 29, 2018

_Deborah A. Batts_
Deborah A. Batts
United States District Judge